UNITED STATES of America, Appellant,

v.

Tommy ROBERTS, Appellee.

No. 836, Docket 75–1052.

United States Court of Appeals, Second Circuit.

Argued March 17, 1975.

Decided April 9, 1975.

Alvin A. Schall, Asst. U. S. Atty. (David G. Trager, U. S. Atty. for the Eastern District of New York, Paul B. Bergman, Asst. U. S. Atty., of counsel), for appellant.

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City), for appellee.

Before SMITH and TIMBERS, Circuit Judges, and BRYAN, District Judge.*

J. JOSEPH SMITH, Circuit Judge:

On January 20, 1975, the United States District Court for the Eastern

* Frederick van Pelt Bryan, of the Southern District of New York, sitting by designation.

District of New York, John F. Dooling, *Judge,* dismissed an indictment charging Tommy Roberts with ten counts of possessing stolen mail in violation of 18 U.S.C. § 1708.[1] The court rested its order on the defendant's constitutional right to a speedy trial under the Sixth Amendment. On appeal, the United States challenges the dismissal on two grounds, each of which it contends offers an independent basis for reversal. First, since Roberts agreed shortly after his indictment to plead guilty to reduced charges and therefore had no expectation of actually going to trial, the Constitution's speedy *trial* guarantee afforded him no protection. Secondly, assuming *arguendo* that the Sixth Amendment does ensure a speedy disposition to persons awaiting only the opportunity to plead guilty, its mandate was not violated in this instance. We find neither contention persuasive and affirm the order below.

Roberts was indicted on October 2, 1973, for unlawful possession of stolen mail "on or about" May 1, 1973. Along with related cases involving Alonzo and Henry Smith, Roberts' case was assigned to United States District Judge Anthony J. Travia of the Eastern District of New York. Although the defendant pleaded not guilty when arraigned before Judge Travia on October 15, he had by then concluded an arrangement with the government to plead guilty to a misdemeanor information. The plea of not guilty at the arraignment is explained by the parties' agreement to defer entry of the guilty plea until the Smith cases were resolved—a resolution not realized until February 14, 1975. About the time of Roberts' arraignment, Judge Travia embarked upon a trial which required the court's almost undivided attention for the next nine months. The Smith cases thus remained quiescent and, as a result, Roberts' entry of a guilty plea was held in abeyance. During that nine-month period, moreover—specifically, on May 21, 1974—Roberts' 26th birthday passed and with it expired the defendant's eligibility for the advantages (primarily, probation and the opportunity to have the conviction erased from his record) of a sentence imposed on him as a young adult offender under the Youth Corrections Act. 18 U.S.C. §§ 4209, 5010(a), 5021.[2] Upon conclusion of the

1. § 1708. Theft or receipt of stolen mail matter generally.

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. § 4209. Young adult offenders.

In the case of a defendant who has attained his twenty-second birthday but has not attained his twenty-sixth birthday at the time of conviction, if, after taking into consideration the previous record of the defendant as to delinquency or criminal experience, his social background, capabilities, mental and physical health, and such other factors as may be considered pertinent, the court finds that there is reasonable grounds to believe that the defendant will benefit from the treatment provided under the Federal Youth Corrections Act (18 U.S.C. Chap. 402) sentence may be imposed pursuant to the provisions of such act.

§ 5010. Sentence.

(a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

lengthy trial, Judge Travia left for an extended vacation and, not long after, resigned from the bench. Both the defendant's and the Smiths' cases were then transferred to Judge Dooling, who on November 13, 1974, called a pretrial conference in Roberts' case to set a date for trial. At the conference, the defendant raised for the first time his right to a speedy trial. One month later, Roberts formally moved to dismiss the indictment for undue delay and, after argument by counsel for both sides and an offer by the government to proceed with the plea bargain despite the still-unresolved status of the Smith cases, Judge Dooling granted the motion on Sixth Amendment grounds.[3] Several weeks afterward, the government and the Smiths successfully concluded months of negotiation for a plea bargain covering postal offense charges related to Roberts' case and possible future indictments for conspiracy to obtain by fraud federally-insured mortgage loans (*see* 18 U.S.C. §§ 371, 1010).

## I.

■■ The appellant's attempt to limit the protection of the speedy trial clause to defendants awaiting trial adopts a too literal reading of that clause. The Sixth Amendment's guarantee of a speedy trial gives recognition to an accused's significant stakes—psychological, physical and financial—in the prompt termination of a proceeding which may ultimately deprive him of life, liberty or property. In Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393

(1957), the Supreme Court was willing to assume *arguendo* "that sentence is part of the trial for purposes of the Sixth Amendment." Since the case currently under review had not, at the time of Roberts' motion to dismiss, even reached the stage at which a defendant must decide whether to plead guilty or proceed forthwith to trial, we need not construe "trial" as broadly as *Pollard* intimates may be appropriate. We hold, therefore, that the speedy trial clause applies with full force at least until a guilty plea has been entered by the defendant and accepted by the court.[4]

## II.

■ In challenging the district court's conclusion that Roberts was denied his constitutional right to a speedy trial, the government does not contend that Judge Dooling applied an incorrect standard. And obviously he did not, for in his memorandum opinion dated January 20, 1975,[5] he adhered to the direction of Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), to assess "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." The government takes issue, then, with the district court's understanding of the application of this multi-factor balancing test to the circumstances of Roberts' case. Close attention to the form assumed by these four variables in the context of Roberts' case, however, fully supports Judge Dooling's decision that the indictment must be dismissed.[6]

§ 5021. *Certificate setting aside conviction.*

(a) Upon the unconditional discharge by the division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the division shall issue to the youth offender a certificate to that effect.

(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court

shall issue to the youth offender a certificate to that effect.

3. The movant also relied on Fed.R.Crim.P. 48(b) and the Due Process Clause of the Fifth Amendment. The district court did not rule on the force of these possible alternative grounds for dismissal. In view of our affirmance on the district court's basis for decision, we also decline to consider them.

4. We leave undecided the question of the application of the speedy trial clause to promptness in sentencing.

5. *See* Appendix of Appellant at 39A–46A.

6. Denial of a defendant's Sixth Amendment right to a speedy trial *requires* dismissal of the

■ At the time of Roberts' motion to dismiss, the post-indictment delay was considerably shorter than others countenanced by this court. *See, e. g.,* United States v. Fasanaro, 471 F.2d 717 (2d Cir. 1973) *(per curiam)* (over four years); United States v. Saglimbene, 471 F.2d 16 (2d Cir. 1972), cert. denied, 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973) (six years). On the other hand, as the Court made clear in Barker v. Wingo, *supra,* 407 U.S. 514 at 530–31, 92 S.Ct. 2182 at 2192, 33 L.Ed.2d 101 a delay not patently unreasonable in length may nonetheless be intolerably long in light of "the peculiar circumstances of the case." And a peculiarity of the instant case highly relevant in this regard was the government's ability to predict with great certainty that Roberts would be seriously prejudiced in the event that he was not permitted to plead guilty prior to his 26th birthday. After that date, Roberts lost his right, *see* Dorszynski v. United States, 418 U.S. 424, 443–44, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), to be considered by the sentencing judge for youthful offender treatment. Significantly, loss of the right to be *considered* for youthful offender treatment amounted in this case to little less than loss of the right to *receive* such treatment: Since this was Roberts' first offense and he had demonstrated a willingness to cooperate with the prosecution, there was, in the district court's view, a "real and substantial" possibility that he would receive the notable advantages of youthful offender treatment.[7] Due regard for the district court's closer contact than ours to the facts and personalities in this case as well as its greater familiarity with the sentencing practices in its district requires that we defer to Judge Dooling's prediction of probable sentencing treatment.

In terms of the Barker v. Wingo balance, the importance of accepting the district court's view on this matter is two-fold. Most obviously, it means that the prejudice factor is substantial: As a

result of the delay, Roberts lost an excellent opportunity to be given, upon pleading guilty, a youthful offender probationary sentence and the chance to have the conviction expunged from his record. Deference to the district court's view on Roberts' probable qualification for youthful offender status, furthermore, also has the effect of making the length of delay factor a weighty one in Roberts' favor: To allow the more than seven months between Roberts' indictment and his birthday to pass was egregious delay in light of the virtual certainty that serious harm would befall Roberts as a consequence.

■ The reason for delay is also a factor favoring dismissal of the indictment on speedy trial grounds. On one level, the delay may be seen simply as a byproduct of Judge Travia's calendar and his decision to resign from the bench. Though institutional delays are chargeable to the government, *see* United States v. West, 504 F.2d 253, 256 (D.C.Cir. 1974), they are not appropriately treated with the same severity as delays procured by the prosecution. To assimilate the delay experienced by Roberts to neutral, institutional causes, then, limits the force of his speedy trial claim. Further analysis indicates, however, that this characterization of the delay would limit the defendant's claim quite unjustly. For, as the district court found,[8] the government plainly had an interest in tardy disposition of Roberts' case and played an important role in procuring the delay experienced by the defendant.

Thus, Roberts was ready to plead guilty back in October, 1973. The prosecution did not permit him to do so, however, because it wanted to make certain that Roberts kept his part of the plea bargain (testifying, if necessary, against the Smiths) before it delivered the consideration promised on its part (replacing the felony indictment with a misdemeanor information). The threat of prosecution on a still alive felony indictment

indictment. Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) *(per curiam)*.

7. Appendix of Appellant at 46A.

8. Appendix of Appellant at 43A.

was therefore a valuable weapon to ensure that Roberts would testify as promised, and the government was not about to relinquish that coercive device by giving Roberts his anticipated fruits from the bargain prematurely. Understandably, then, while the Smith cases remained untried, the government did not attempt to get Judge Travia's attention long enough for Roberts to plead guilty.

The government's responsibility for the delay in Roberts' case, however, extends even further, for the prosecution made no effort whatsoever to accelerate trial of the Smith cases. Though not himself available to try the cases, Judge Travia may have, if asked, transferred the cases to another judge in the Eastern District; indeed, during the course of his lengthy trial, Judge Travia granted several such requests. But since the government was hoping to work out a plea bargain with the Smiths on existing and prospective indictments not all related to the charges against Roberts, an accelerated trial date was obviously the last thing it wanted. The delay in trying the Smiths—and the resultant delay in Roberts' case—was thus not of the government's active making but it was very much dependent on the government's studied inactivity insofar as moving the Smith cases toward trial.

■ We find, then, that the reason for delay in Roberts' case is a factor in the Barker v. Wingo calculus to be counted heavily against the government. In making this assessment, we do not mean to fault generally plea bargains in which a defendant's faithful performance of his part of the agreement is made a condition precedent to the prosecution's consent, at the time of pleading, to a reduction in the charges. We do, however, reject any notion that a defendant in effect waives his right to a speedy trial by consenting to such an agreement. Thus, if the government wishes to bargain for this condition, it may but it should do so mindful of the risks which it thereby assumes of dismissed indictments for unconstitutional delay.

■ The defendant's assertion of his right, the final factor to be considered, is the only one of the four variables elucidated in Barker v. Wingo which militates against the conclusion that Roberts' constitutional right to a speedy trial was violated. Rather than press for a disposition of his case prior to his 26th birthday, Roberts silently let that date pass; when he claimed for the first time (in November, 1974) that he had been denied his right to a speedy trial, the prejudice of which he now complains had long since been realized. As the Court indicated in Barker v. Wingo, however, a defendant's failure to demand an earlier disposition of his case does not mean that he has waived his right to a speedy trial during the period of his silence. 407 U.S. 514 at 528, 92 S.Ct. 2182, 33 L.Ed.2d 101. Instead of applying a *per se* demand-waiver rule, courts are obligated to employ "judicial discretion based on the circumstances," *id.* at 529, 92 S.Ct. at 2191, in determining the appropriate weight to be given this demand factor in the specific case.

Accordingly, in the case under review, two circumstances mitigating the seriousness of Roberts' inaction must be taken into account. First of all, in view of the defendant's almost certain personal ignorance of the implications of delay beyond his 26th birthday, the significance of the demand factor in the Barker v. Wingo balancing test is notably less than usual. This inference flows from the Supreme Court's explanation in Barker v. Wingo, *id.* at 531–32, 92 S.Ct. 2182, of the reason why a defendant's assertion of his speedy trial right is a particularly important consideration: because it casts light on the seriousness of the prejudice caused by the delay. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* at 531, 92 S.Ct. at 2192. Thus, since any nexus between assertion of the right and prejudice suffered is belied in the instant case by Roberts' probable obliviousness to the legal consequences of delay beyond his birthday, the usual justification for assigning great, and perhaps decisive,

weight to this single factor is plainly missing. As a result, Roberts' failure to demand an earlier disposition of his case necessarily tends to negative his speedy trial claim only slightly.

Also minimizing the significance of Roberts' inaction to the end-result of the balancing test is his confrontation, throughout the period of delay, with a major practical obstacle to raising his speedy trial rights. As Judge Dooling pointed out, a demand for prompter disposition "might have invited the risk that the Government would insist on a felony plea or a transfer of the case to another judge for speedy trial on the ten felony charges"[9]—obviously not a prospect conducive to vigorous assertion of constitutional rights. Once again, moreover, the district court's finding is of a nature which calls for considerable deference on our part in light of the lower court's closer contact with the parties and its greater familiarity with practices in its district.

We accept, then, the district court's conclusion that the defendant was denied his Sixth Amendment right to a speedy trial. The speedy trial clause is plainly applicable although the defendant contemplated not a trial but instead a plea of guilty. In terms of the multi-factor balancing test prescribed by the Supreme Court in Barker v. Wingo, assessment of three of the factors in the context of this case strongly indicates that Roberts was denied his Sixth Amendment right to a speedy trial; consideration of the fourth factor, the defendant's assertion of the right, only mildly and inconsequentially qualifies this conclu-

sion. The district court's order dismissing the indictment for reasons of unconstitutional delay must therefore be affirmed.

Affirmed.

**FREDERICK van PELT BRYAN**, District Judge (concurring):

I concur in affirming the order appealed from on the ground that, under the highly unusual circumstances of this case, the dismissal of the indictment by the District Court was a proper exercise of judicial discretion.

**TIMBERS**, Circuit Judge (dissenting):

The Supreme Court in Barker v. Wingo, 407 U.S. 514, 522 (1972), made it very clear that "the unsatisfactorily severe remedy of dismissal of the indictment" was not intended to reward a defendant who has failed to assert his right to a speedy trial. That is especially so where "[c]ounsel was appointed for [the defendant] immediately after his indictment and represented him throughout the period" and where "[n]o question is raised as to the competency of such counsel." Id. at 534. The Court could hardly have been more emphatic, in evaluating the factors to be weighed to determine whether a defendant has been deprived of his right to a speedy trial, when it stated, *"We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id.* at 532 (emphasis added).

The instant case involving a *13 month* delay, in my view, is an even more compelling one for rejection of the claim of denial of a speedy trial[1] than was *Bark-*

---

9. Appendix of Appellant at 45A.

1. I agree with the majority in declining to consider Roberts' claims based on the due process clause of the Fifth Amendment or Fed.R. Crim.P. 48(b), upon which the district court did not rule. The only claim upon which the district court ruled was the alleged denial of the Sixth Amendment right to a speedy trial. Hence that is the only issue properly before this Court.

The majority opinion, moreover, is notable for what it does *not* hold. It does not hold

that the speedy trial clause of the Sixth Amendment applies to delay in imposing sentence. See majority opinion, Section I, last two sentences, and footnote 4. Since Roberts had entered a not guilty plea on October 15, 1973, quite clearly the majority opinion is limited to application of the speedy trial clause to a *change of plea,* i. e. the change of plea contemplated by the plea bargain to which Roberts and the government had agreed at the time of arraignment on October 15. This is significant in light of the repeated references in Barker v. Wingo, *supra,* to the nonavailabili-

*er* where it was held that the defendant had not been deprived of a speedy trial despite the *5 year* delay.

Here Roberts has been represented throughout proceedings in the district court and on appeal by Legal Aid Society counsel.[2] No question has been raised as to the competency of such counsel. At the time of his arraignment on October 3, 1973, while represented by counsel, Roberts entered into a plea bargain. The government agreed to recommend that he be permitted to plead guilty to a misdemeanor information in satisfaction of the indictment charging him with ten felony counts of possessing stolen mail; he agreed to cooperate with the government in separate but related indictments against Alonzo and Henry Smith; *and both the government and Roberts agreed that entry of his guilty plea would be deferred until after the government had completed its prosecution of the Smiths.* That occurred on February 14, 1975, less than a month after the district court below dismissed the indictment against Roberts. There is no dispute about the terms of the plea bargain. It is undisputed that the government at all times has been willing to honor the plea bargain. It still is.

The linchpin of this case is that Roberts and his Legal Aid Society counsel, knowing full well the terms of the plea bargain stated above, sat on their hands throughout proceedings in the district court and never asserted his right. to a speedy trial until 6 months after he had turned age 26. As Judge Dooling found, "defendant raised for the first time the alleged denial of this Sixth Amendment right to a speedy trial" at an initial pretrial conference held at the instance of the Court on November 13, 1974. And, of critical importance here, Judge Dooling further found that defendant "could have pressed for a disposition on the very ground now assigned as a reason for dismissal—that he could hope for Youth Corrections Act treatment only if sentenced before his twenty-sixth birthday" which was May 21, 1974.

On these findings, I fail to see any denial of a Sixth Amendment right to a speedy trial, especially in view of the Supreme Court's emphatic warning that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker v. Wingo, *supra,* 407 U.S. at 532.[3]

I would vacate the judgment of the district court and remand with instruc-

ty of the speedy trial provision of the Sixth Amendment to a defendant who "definitely did not want to be tried." 407 U.S. at 535; *id.* at 534, 536. The last thing that Roberts wanted was to be tried.

2. His district court Legal Aid counsel was not the same as his appellate Legal Aid counsel.

3. The *four factors identified in Barker* to be assessed in determining whether a defendant has been deprived of his right to a speedy trial are "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530.

The third factor—*defendant's assertion of his speedy trial right*—has been discussed above. The short of it is that he totally failed to assert this right until 6 months after the critical date.

The *length of delay* here—13 months—was not of sufficient magnitude to warrant dismissal in view of the many post-*Barker* cases in our Court and others where claims of denial of speedy trial have been rejected despite delays between the date of arrest or indictment and

the date of trial of 12 months or more. E. g., United States v. Annerino, 495 F.2d 1159, 1162–64 (7 Cir. 1974) (15 months); United States v. Joyner, 494 F.2d 501, 505–06 (5 Cir. 1974) (1 year); United States v. Nathan, 476 F.2d 456, 461 (2 Cir.), cert. denied, 414 U.S. 823 (1973) (2 years); United States v. Fasanaro, 471 F.2d 717 (2 Cir. 1973) (4 years); United States v. Counts, 471 F.2d 422, 426–27 (2 Cir.), cert. denied, 411 U.S. 935 (1973) (16 months); United States v. Saglimbene, 471 F.2d 16 (2 Cir. 1972), cert. denied, 411 U.S. 966 (1973) (6 years).

The *reason for the delay* here was twofold: the plea bargain pursuant to which both the government and the defendant agreed that entry of his plea would be deferred until after disposition of the case against the Smiths; and Judge Travia's involvement in the trial of United States v. Bernstein, 72 Cr. 587. The latter recently has been rejected by us as a ground for an asserted denial of the Sixth Amendment right to a speedy trial. United States v. Drummond, 511 F.2d 1049 (2 Cir. 1975).

The claimed *prejudice to defendant* here is a far cry from the prejudice referred to in *Bark-*

tions to reinstate the indictment to permit the parties to honor the plea bargain—a bargain that the government in the utmost good faith has been willing to honor. This surely is a most inappropriate case in which to invoke "the unsatisfactorily severe remedy of dismissal of the indictment . . . . [which] is indeed a serious consequence because it means that a defendant who [is] guilty of a serious crime will go free. . . ." Barker v. Wingo, *supra,* 407 U.S. at 522.

I therefore respectfully dissent.

er which "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532. Obviously no such interest is here involved. The only claimed prejudice is Roberts' asserted loss of eligibility to be treated as a young adult offender under the Federal Youth Corrections Act. 18 U.S.C. §§ 4209, 5005 et seq. (1970). With deference, the majority opinion's massive reliance upon this factor strikes me as taking for granted a great deal more than is warranted, including whether Roberts himself would have requested treatment under the Y.C.A. Experience on the district court has taught that a significant number of defendants eligible by reason of age for Y.C.A. treatment flatly reject it when asked, at the time of entry of plea or change of plea, whether they understand that they may be committed for as long as 6 years. And yet failure to so inform a defendant at the time of plea is ground for vacating a Y.C.A. sentence. See Matthews v. United States, 308 F.Supp. 456 (S.D.N.Y.1969), and authorities cited at 458. All else aside, Roberts' failure to assert his right to a speedy trial until 6 months after he had turned 26 years of age is the most compelling indication that neither he nor his Legal Aid counsel ever wanted Y.C.A. treatment. What the Supreme Court said in the case of Willie Mae Barker is most assuredly true in the case of Tommy Roberts: "[W]e would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." Barker v. Wingo, *supra,* 407 U.S. at 536.