MR. JUSTICE DALY
delivered the dissenting opinion.
During oral argument the attorney general characterized this as “a political case”. It was not made clear what significance was intended. The majority here has scrupulously avoided any reference to the political background of this or related Workmen’s Compensation cases but does set the case apart at p. 787 of the opinion with “It is perhaps more severe in this case than in the usual case. But this is an unusual case.” (Emphasis supplied).
Appellate judges have said in the past that it is not necessary that a court pretend to be more ignorant than it actually is, nor more ignorant than the public generally. I believe this to be true. The political history and excessive media treatment has not escaped my notice. Be this as it may, I cannot agree that cases should be viewed or treated as political or unusual or whatever. This case is what it is, a single offense $5,000 fraud case, alleged by the state to be a crime. The kind of case where the facts, not names, are important. The kind of case the average county attorney sees frequently and disposes of within several weeks or a month with no problems.
The majority opinion relies almost exclusively on Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and I do not deny its authority. However, in explaining the application of Barker to the Montana cases of Steward, Sanford and Keller, the majority states at p. 783 “These cases generally involve a sensitive balancing of four principal factors * * (Emphasis added.) Again the majority states at p. 784, that *92 “Montana has adopted and applied the four factor balancing test in Barker * * (Emphasis added). Further, that “In this case, the state’s rebuttal must be weighed and considered in the light of the four factor test of Barker.” (Emphasis added.) Thus it is obvious that the majority over-simplifies the principles of Barker. The case is not so narrow and restricted as the majority would lead us to believe. In it, the United States Supreme Court, stated:
“We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities;; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused’s interest in a speedy trial is specifically affirmed in the Constitution.” (Emphasis added.) 407 U.S. 533, 92 S.Ct. 2193.
Many cases following Barker have recognized that the principles are not so constricted as the majority assumes. The foregoing quotation was set out and approved in its entirety in Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183, 185, 186. As stated in United States v. Dreyer, 3 Cir., 533 F.2d 112, 115:
“* * * The Court emphasized that it did not intend the list to be exhaustive nor any one factor dispositive and that other relevant circumstances should also be considered.” (Emphasis added.)
It is the “other relevant circumstances” set forth above in this opinion, which cannot be ignored for a proper application of Barker.
The majority opinion purports to give full support to the rejection by Barker of the “demand-waiver doctrine”. After doing so, however, the majority goes all the way around the horns of *93 their dilemma and gives actual effect to the “demand-waiver” rule. For this reason, we should look at the United States Supreme Court’s statement in connection with the rule in Barker:
“Such an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with this Court’s pronouncements on waiver of constitutional rights. The Court has defined waiver as ‘an intentional relinquishment or abandonment of a known right or privilege.’ * * * Courts should ‘indulge every reasonable presumption against waiver,’ * * * and they should ‘not presume acquiescence in the loss of fundamental rights,’ * * * In Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), we held:
‘Presuming waiver from a silent record is impermissible * * * there must be an allegation and evidence * * ” 407 U.S. 525, 526, 92 S.Ct. 2189-2190.
By, in effect, applying the “demand-waiver rule”, the majority does further violence to the law enunciated in Barker:
“The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society’s representatives are the ones who should protect that interest.” (Emphasis added.) 407 U.S. 527, 92 S.Ct. 2190.
The majority opinion at page 783 attempts to support its ultimate conclusion by citing the cases relied on by the state, wherein delays in excess of that Judge Sorte was confronted with were involved. It should be noted the only United States Supreme Court case cited is United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627, decided February 23, 1966, over 6 years prior to Barker. Since Barker is universally accepted as the Bible on speedy trial issues, and since it has been a foundation *94 for the new federal rules and the decisions drastically reducing permissible delays in bringing a case to trial, any authority of “Ewell” is diluted, and to some extent superseded by Barker. Further, the facts in Ewell are not at all similar to those of the instant case, nor are the facts in the other cases cited by the state and the majority.
It should be noted also that the delay in Ewell was not “substantially in excess” of that in this case, as stated by the majority. In this case, the time between the filing of the Information and the order of Judge Sorte was 585 days, as compared to 576 in Ewell. At any rate the quotation of the majority from Ewell at pages 784, 785 of the majority opinion, is not consonant with the national trend since 1966. The substance of the quotation is that unless prosecution is “purposeful or oppressive” in delaying a prosecution, there is no denial of a speedy trial. This is not the law under the 1972 Barker decision and the cases and rules applied since then. This has not been the law in Montana, prior to the majority decision in this case.
The majority opinion makes this charitable statement at p. 786:
“In our view the record in this case amply demonstrates that the defendants did not really want a speedy trial.” (Emphasis added.)
This is an exceedingly transparent effort to bring this case within the result of Barker, but this case is in no manner or way similar under the facts of Barker. There, Barker was anxiously awaiting the outcome of trials and appeals in the related case of Manning, who was charged with the same crime. Barker was gambling that his case would be dismissed if Manning were eventually acquitted. The state obtained 16 continuances of trial dates, and Barker made no objection to 13 of these continuances. He thoroughly approved of the delays until he lost his bet. There are absolutely no similar facts in this case.
Moreover, a search of the record fails to disclose any evidence to support this gratuitous statement of the majority. Likewise, if *95 there was any issue of fact before Judge Sorte as to whether or not the Cardens wanted to go to trial, it is not apparent from the record. Under the established rules of appellate procedure neither an issue of law nor an issue of fact can be raised for the first time on appeal. The majority completely by-passes this principle.
The discretion vested in the trial court and the presumptions in thé trial court’s favor recognized in Steward seem to have no meaning in this case. This Court stated in Steward:
“This Court has held many times that all presumptions are in favor of the trial court’s decision. [Citing cases.] The district court had ample opportunity to view the record and determine the inferences to be drawn from the actions of the parties. We find no substantial evidence on the record rebutting the presumption the district court acted properly in holding the actions of defendant and his attorney did not waive the right to a speedy trial.” (Emphasis added.) 543 P.2d 183.
This court further recognized the discretion vested in the trial court in connection with the question of dismissal with prejudice. In Steward, we said:
“* * * The state may exercise discretion as to whether the accused will be reprosecuted. The trial court should possess similar discretion to disallow reprosecution if the prejudice caused the accused and his defense by the denial of a speedy trial could be compounded by a subsequent prosecution for the same offense.” 543 P.2d 184.
If we continue to recognize the presumption in favor of the ruling of the trial court there is no basis for reversal on this record. If the majority bases its holding on manifest abuse or lack of substantial evidence, it should so state.
The contention that the state has no responsibility for the time consumed in connection with defendants’ 56 motions attacking the Information creates a bit of a “stench”. There is no way or no case to support any angle the state can use to avoid responsibility for the time attendant to disposing 13 of the 19 counts. *96 The majority opinion denies that “the initial filing of a 19 count Information in this case [was] unreasonable” at page 785, but the state admitted 13 counts were untenable. To say they were improvidently filed would be undeservedly apologetic and charitable. (See also in this connection: § 3.9(c)(e) of Std. for Criminal Justice of American Bar Association and Disciplinary Rules 7-103A and 1-102(A)(4)(5); Montana Canons of Professional Ethics 3.9(a)(c)(e).) See also: United States v. Pauline Pipe, (Mont.) Havre-Glasgow Div., Federal District Court CR-77-10HG, April 1977, for a discussion concerning repeated indictment as denial of due process which doctrine would not exclude application to untenable Information counts.
The majority further condemns the defendants in relation to the number of counts at p. 785 of its opinion, saying “this is largely speculative and unconvincing in light of the 25 motions filed by the defendants attacking the amended Information and the additional discovery motions, venue motion, severance motion, and motion relating to pretrial publicity.” This charitable statement seems to assume that all motions should be filed at the outset of the proceedings. After a declaration of “unusual case”, I fail to see any justification for the characterization “speculative and unconvincing” to describe motions relating to venue and pretrial publicity, prior to the time the grounds had fully accrued, or not filing discovery motions prior to the time when it was determined whether or not the Information would be dismissed.
The majority on p. 784, recognizes that 544 days between filing Information and trial date was sufficient to trigger an inquiry as to speedy trial in the following language:
“It establishes a prima facie case of denial of a speedy trial. State ex rel. Sanford v. Dist. Ct., supra. If this prima facie case remains unrebutted, the issue is settled.” (Emphasis added.)
Having purported to recognize the rule, the majority emasculates it by ignoring that the burden is upon the state to rebut the *97 presumption of a denial of a speedy trial and it is the duty of the state to bring the case to trial.
On p. 785 of its opinion, the majority blandly states:
“In our view the state has pursued the prosecution with reasonable diligence.”
This statement cannot be justified by the record and particularly the state’s belated disqualification of Judge Allen after presiding for 264 days, but, more than that, it sidesteps the issues. The question is not limited to whether the prosecution proceeded with “reasonable diligence” but whether or not the defendants were deprived of a constitutional right. If they were so deprived at the hands of the state, it matters not whether it was the executive, legislative or judicial branch at fault. (In this regard, see admissions by state in Petition for Supervisory Control v. Arnold Olsen (Goldman dismissal), April 26, 1977.)
The majority states at p. 786:
“* * * The further circumstance that defendants waited until the eve of trial to file their motions illustrates the transparent nature of their claim that they were deprived of their constitutional right to a speedy trial.” (Emphasis added.)
Let us take a good look at the above statement and then compare it with the unanimous expression of the Court in Steward. It was there said:
“The ‘appropriate motion’ is a motion to dismiss for denial of a speedy trial. The proper time to assert the right to a speedy trial is prior to the actual commencement of the trial, usually at the time the trial date is set, or the time the case is called to trial. Morse v. Municipal Court, et al., 13 Cal.3d 149, 118 Cal. Rptr. 14, 529 P.2d 46. Defendant, in the instant case, made his motion to dismiss at the proper time.” (Emphasis added.) 543 P.2d 182.
We also stated in Steward:
“The district court here was correct in holding:
“ ‘* * * the Defendant’s attorney wóuld not be representing *98 the Defendant if he would raise the question of the fair speedy trial. This was incumbent upon the County Attorney to do so under the circumstances.’ ” (Emphasis added.) 543 P.2d 182.
Here, the “tentative trial date” was June 17, 1976 and on May 11, 1976 defendants filed their motion to dismiss for lack of a speedy trial. How does this differ from the law announced in StewardP
The majority attempts to circumvent Barker by constant reference to lack of “dead time”, pp. 785 and 786 of its opinion, apparently on the theory that if there is no extended interlude without some activity there can be no deprivation of a speedy trial. There is a very conspicuous lack of authority cited for this theory, and the only mention in Barker of “dead time” is in a totally different context. There Justice Powell observed:
“* * * Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time.” (Emphasis added.) 407 U.S. 532, 533, 92 S.Ct. 2193.
Any application of this statement to the instant case is difficult to see or understand.
In passing I must comment that at p. 785 of its opinion the majority takes the position that the state of “society” is left “naked of the means to protect itself in the fact of any protracted and spirited defense.” In light of the facts of this case, the statement can only be viewed as an apology for incompetence. If nothing else it is a new concept that the state needs protection from individual defendants. Society does have an- interest in speedy trials, but it is not adversary. It is in upholding and protecting the integrity of the judicial system against the deficiencies and abuses of its agencies which are in total control of the state government. The defendants and society, rather than arch adversaries, are in a position of parallel interests. It is ludicrous to make the assertion, particularly in what the state has termed an “unusual case” backed by state appropriation of approximately $1,933,737.00, against a handful of defendants. This imbalance is not a naked society but approaches tyranny.
*99 The thread of misunderstanding runs all through the majority opinion and finally in the summary, p. 787, asserts:
“* * * the circumstances of this particular case involve substantial delay resulting primarily from the exercise of statutory procedural rights inherent in Montana’s criminal justice system for which neither the state nor the defendants are chargeable * * (Emphasis added.)
This statement like the rest of the opinion misses the principal point, that this is not a one or single element matter, such as how the prosecution proceeded, that controls. Rather it is the total effect of the system. If the “Montana criminal justice system” is so structured that a relatively simple, single transaction, alleged to be criminal, results in a 544 day delay of trial, then there has been a denial of a speedy trial, and it matters not whether it resulted in action or inaction by the courts, prosecution or legislature, or all in concert, the state is the system and totally responsible for “statutory procedures inherent in Montana’s criminal justice system”.
Again, the majority persists in ignoring the basic rule of Barker:
“* * * But the rule we announce today, which comports with constitutional principles places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. * * *” 407 U.S. 529, 92 S.Ct. 2191.
Again, on the matter of prejudice, I point out to the majority that:
(1) District Judge Sorte in the memorandum supporting his “order and judgment dismissing with prejudice” stated:
“In this State the law is that long delay establishes -a primafacie case of denial of a speedy trial. This case, as of July 28, 1976, was 586 days from the date of the filing of the Information and is presently set for trial August 16th, 1976, which is 605 days. Sanford (July 8th, 1976) held delay of ten months (299 days) between arraignment and trial establishes a primafacie case of denial of the right to a speedy trial. That situation *100 is present here as is the presumption of prejudice (Sanford v. District Court [170 Mont. 196, 551 P.2d 1005], State v. Steward [168 Mont. 385, 543 P.2d 178], and cases cited. Uncontradicted testimony given by defendants at a hearing held May 17, 1976, in Great Falls, Montana clearly establishes prejudice beyond the presumption. (See Exhibits admitted June 17, 1976.)”
(2) The state has offered no evidence to contradict this testimony.
(3) The state has the burden to not only produce proof of no prejudice but overcome the presumption of correctness of Judge Sorte’s judgment.
(4) In State v. Keller, 170 Mont. 372, 553 P.2d 1013, 1017, this Court again stated one of the major purposes of a speedy trial is to protect the accused in the following language:
“In his concurring opinion in Barker, 407 U.S. at page 537, 92 S.Ct. at page 2195, 33 L.Ed.2d at page 121, Justice White emphasizes one of the major purposes in protecting the accused. Wholly aside from possible prejudice to a defense on the merits, the accused will be subject to substantial restrictions on his liberty pending trial, either in jail or while free on bond, ‘ * * that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.” ’ U. S. v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).”
In United States v. Dreyer, 3 C.C.A., 533 F.2d 112, 115, it was stated:
“This reading of Barker, which confines ‘prejudice’ to impairment to the defense, was explicitly rejected by the United States Supreme Court in Moore v. Arizona, 414 U.S. 25, 26-27, 94 S.Ct. 188, 189-190, 38 L.Ed.2d 183, 185-186 (1973) (per curiam). There the Court quoted approvingly from Justice *101 White’s concurring opinion in Barker v. Wingo, supra, 407 U.S. at 537, 92 S.Ct. at 2195, 33 L.Ed.2d at 121:
“ ‘Inordinate delay “wholly aside from, prejudice to a defense on the merits, may ‘seriously interfere with the defendant’s liberty, whether he is free on bail or not, and * * * may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.’ ” United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial on or bail subject to substantial restrictions on his liberty.’
“The majority in Barker also recognized that an accused is ‘disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.’ Barker v. Wingo, supra, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. A proper reading of Barker, therefore, must include within the meaning of ‘prejudice’ any threat to what the Second Circuit recently has termed ‘an accused’s significant stakes — psychological, physical and financial — in the prompt termination of a proceeding which may ultimately deprive him of life, liberty or property.’ United States v. Roberts, 515 F.2d 642, 645 (2d Cir. 1975).” (Emphasis added.)
(5) Our files do not reveal the defendants are proceeding forma pauperis, but are using their own assets.
(6) Hence, the prejudice found and within the contemplation of Barker, Marion and Dreyer and adopted by Montana in Keller, has not been recognized by the majority beyond “this is an unusual case”.
(7) There has been no burden established by the majority and no burden met by the state.
(8) The state has disposed of the entire issue of prejudice summarily and totally ignored the uncontroverted principle that the burden is upon the state to establish that there has been no pre *102 judice. The majority in stating “there is nothing in the record to suggest” (Emphasis added.) any of these types of prejudice has unwittingly conceded that the prejudice element must be resolved 100% in favor of defendants. Even if the burden was on the defendants the conclusion of the majority would be untenable under the authority of Dryer and cases cited therein, and Keller.
I would ask the majority in this opinion, what is the state of the law as it has been announced in the many decisions setting forth the doctrine that the judgment of the district court is presumed to be correct and all doubt resolved in favor of the prevailing party on appeal. How are we to view the doctrine established by Steward, Sanford and Keller? Are they still the law, except in “unusual” or “political cases”?
I, for the reasons stated, feel Judge Sorte’s judgment should be affirmed.
L. C. GULBRANDSON, District Judge, sitting for Chief Justice PAUL G. HATFIELD, agrees with the dissent of Mr. Justice DALY, to the extent said dissent imposes responsibility upon the State of Montana for “institutional delays” in the criminal justice system.