MR. JUSTICE HASWELL
delivered the opinion of the Court.
*79 Defendants James J. Carden and his wife Gloria Eusek Carden were charged with several crimes arising out of a $5,000 settlement of her Workmen’s Compensation claim. The district court, Lewis and Clark County, dismissed the case on the ground that defendants had been denied their constitutional right to a speedy trial. The state appeals. We reverse.
On December 20, 1974, the attorney general filed a direct Information against the defendants in the district court of Lewis and Clark County. Defendant James J. Carden is the former administrator of the Workmen’s Compensation Division, Department of Labor and Industry, of the State of Montana. Defendant Gloria Eusek Carden is the wife of defendant James J. Car-den. The Information contained 19 counts charging defendants with the following crimes in connection with a $5,000 settlement of Gloria Eusek Carden’s claim under the Workmen’s Compensation Act: Embezzlement by a public officer; grand larceny; obtaining money or property by false pretenses; presenting false proofs on a policy of insurance; officer illegally interested in a contract; offering false or forged document to be recorded; preparing false evidence; and offering false evidence.
Defendants made their initial appearance on January 3, 1975, before District Judge Gordon R. Bennett. Defendants were granted additional time to brief the Information and were released on their own recognizance. On January 9, 1975, District Judge Nat Allen assumed jurisdiction of the case upon request of Judge Bennett.
On January 17, 1975, Judge Allen granted defendants an extension of time to February 10 in which to file their motions and briefs. On February 10 defendants filed 56 motions attacking the Information in various particulars. Defendants received an extension of time to February 26 to file their supporting brief.
On March 18, Judge Allen revised the briefing schedule on defendants’ motions so that defendants’ brief was due on April 21, the state’s answering brief was due on May 21 and defendants’ reply brief was due on May 30. The state contends this *80 was done to synchronize the briefing schedule in this case with the briefing schedule in State v. James J. Carden, Cause #3937 in the district court. Defendants deny this.
On May 20, the state received an extension of time to June 4 to file its answering brief. Thereafter defendants received an extension of time to July 3 in which to file their reply brief.
On August 4, the state moved to disqualify Judge Allen resulting in an appeal to this Court. We ruled that Judge Allen was disqualified. On September 30, District Judge Jack D. Shanstrom assumed jurisdiction.
On October 21, Judge Shanstrom set all pending motions for hearing on November 17. On November 3, defendants disqualified Judge Shanstrom.
On December 9, District Judge Paul G. Hatfield assumed jurisdiction. Judge Hatfield set all motions by the defendants for hearing on February 4, 1976. At the hearing, Judge Hatfield requested counsel to submit proposed orders and requested the state to review its Information for consolidation of counts. According to the state, it subsequently wrote Judge Hatfield suggesting that the Information could be reduced to 6 counts and the judge concurred.
On April 14, 1976, Judge Hatfield entered an order (1) dismissing 13 counts of the Information, (2) granting the state leave to file an amended Information, (3) indicating that many of the defendants’ original motions were rendered moot by the dismissal of the 13 counts, and (4) setting a further hearing for April 27. This was subsequently continued to May 4 due to inclement weather.
In the meantime, on April 21, the state filed an amended Information containing 6 counts. In the amended Information the defendants were charged with 6 crimes generally corresponding to the remaining counts in the original Information. The crimes charged in the amended Information were: Embezzlement by a public officer; grand larceny; offering a forged or false document to be recorded; and preparing false evidence.
*81 Following the hearing on May 4, Judge Hatfield set May 14 as the date for arraignment of defendants on the amended Information; May 17 was set for hearing further motions to be filed by defendants; and June 17 was set as the tentative trial date.
On May 11, defendants filed their motion to dismiss the case for denial of a speedy trial in violation of the Sixth Amendment to the United States Constitution and Art. II, section 24, 1972 Montana Constitution.
On May 17, defendants presented the state with 25 motions attacking the amended Information; a motion to dismiss all charges because of prejudicial pretrial publicity; a motion for change of place of trial; a demand for production of documents for trial; a motion for production of documents; and a motion to compel the state to furnish defendants with a copy of any oral or written confessions or admissions with a list of witnesses.
On May 27, defendant Gloria Eusek Carden moved for a severance of her trial from that of James J. Carden.
On June 8, Judge Hatfield, who was then engaged in a statewide campaign for election as Chief Justice of this Court, removed himself from jurisdiction in the case, following a motion by defendants.
District Judge James Sorte then assumed jurisdiction and set all motions by defendants for hearing on June 17. Following hearing all motions by defendants were denied, except those relating to discovery. Trial was set for August 16.
On July 16, defendants requested a hearing on the issue of a speedy trial. The rehearing was held on July 28, in Kalispell during the annual convention of the State Bar of Montana. Judge Sorte ruled from the bench that the case be dismissed for lack of a speedy trial. The state filed its notice of appeal the following day. On August 1, Judge Sorte filed a memorandum opinion setting forth the reasons for his ruling.
The appeal was originally argued on October 22, 1976 and re-argued on February 9, 1977,
*82 The sole issue on appeal is whether the defendants have been denied their constitutional right to a speedy trial. We note defendants have presented 16 additional issues for review relating to other pretrial aspects of the case, which we will not review at this time as the district court’s dismissal is based exclusively on denial of a speedy trial.
Although the arguments of the respective parties on the speedy trial issue consist of hundreds of pages of briefs filed in the district court and in this Court on appeal, we will endeavor to summarize the principal positions of the respective parties in brief, understandable form. In so doing, we will confine ourselves to the basic thrust of the arguments as we view them, directing our attention to the forest rather than the individual trees.
The defendants principally contend that they have been denied their constitutional right to a speedy trial under the principles enunciated by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, and our decisions in State v. Steward, 168 Mont. 385, 543, P.2d 178; State ex rel Sanford v. Dist. Ct., 170 Mont. 196, 551 P.2d 1005; and State v. Keller, 170 Mont. 372, 553 P.2d 1013. These cases generally involve a sensitive balancing of four principal factors in the individual case to determine whether a given defendant has been denied a speedy trial: (1) length of delay, (2) reasons for the delay, (3) assertion of the right by defendant, and (4) prejudice to defendant.
Defendants contend that when these four factors are properly evaluated and balanced under the circumstances of this case, defendants have clearly been denied their right to a speedy trial. They emphasize the length of the delay here is excessive and unreasonable; that the principal reason for the delay is the manner in which the state chose to prosecute the case by a 19 count Information covering an essentially simple factual transaction; that the duty is on the state to afford defendants a speedy trial, which defendants have neither waived nor consented to; and that defendants have suffered severe actual prejudice by the failure of *83 the state to bring them to trial within a reasonable time. In short, defendants claim the state is responsible and chargeable with unreasonbly delaying the trial of defendants without justification entitling defendants to dismissal of the charges against them.
The basic position of the state, on the other hand, is that while the four factor balancing test of Barker and its Montana progeny Steward, Sanford and Keller is controlling, a proper evaluation and balancing of these factors demonstrates that defendants have not been denied a speedy trial within constitutional requirements. The state argues it has pursued the prosecution of this case with dispatch and cites several cases where delays sub: stantially in excess of those here were held not to constitute violations of constitutional speedy trial guarantees: Barker, supra; United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627; United States v. Lane, 5 Cir., 465 F.2d 408; United States v. Jones, 154 U.S.App.D.C. 211, 475 F.2d 322; United States v. Skeens, 161 U.S.App.D.C. 131, 494 F.2d 1050; United States v. Churchill, 1 Cir., 483 F.2d 268; Ricon v. Garrison, 4 Cir., 517 F.2d 628; United States v. Fairchild, 7 Cir., 526 F.2d 185; United States v. Stein, 2 Cir., 456 F.2d 844; Constabile v. State, (Okl.Cr.) 513 P.2d 588.
The state emphatically denies that it is responsible or chargeable with the principal delays involved in this case, viz. the time necessarily consumed in researching, briefing, arguing, and securing a decision on the voluminous motions filed by the defendants and the time necessarily consumed incident to disqualification of judges by both the defendants and the state. The state further contends that the defendants have never sought a speedy trial and are not now prepared to go to trial. Finally, the state distinguishes Steward, Sanford and Keller but requests us to review our prior holdings in Steward and Sanford on assertion of the right to a speedy trial by defendants.
As a further preface to our decision herein, we note the prior rulings of the district court on defendants’ motion for dismissal *84 of this case for denial of a speedy trial. The district court initially denied defendants’ motion. Subsequently a rehearing was granted and the district court granted defendants’ motion. Briefly stated, the district court reasoned that the long delay in bringing the defendants to trial in this case established a prima facie case of denial of a speedy trial; that both presumptive and actual prejudice to defendants resulted from this delay; that three principal reasons accounted for the delay in this case (1) the Montana disqualification law and the changing judges, (2) the filing of multiple counts (19) by the prosecution in a relatively simple factual situation, and (3) the state’s disqualification of Judge Allen after he had considered the case for over 7 months; that none of these delays was chargeable to defendants; and therefore the defendants were entitled to dismissal for lack of a speedy trial. Implicit in the district court’s reasoning although not specifically stated therein is the proposition that delays not chargeable to the defendants are the responsibility of the state.
The starting point in our analysis of the speedy trial issue is Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, which both the state and the defendants concede is controlling. Barker rejects the two arbitrary approaches to the issue of speedy trial in favor of a balancing test in this language:
“We, therefore, reject both of the inflexible approaches — the fixed-time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which we have deemed fundamental. The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.” 407 U.S. 529, 530, 92 S.Ct. 2191.
The substance of the balancing test in Barker is described in these words:
“A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of *85 his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.” 407 U.S. 530, 531, 92 S.Ct. 2192.
Montana has adopted and applied the four factor balancing test in Barker in determining the speedy trial issue under Art. II, section 24, 1972 Montana Constitution, as well as under the United States Constitution in three principal cases: State v. Steward, supra; State ex rel. Sanford v. Dist. Ct., supra; State v. Keller, supra.
The length of the delay between the filing of the Information and the date set for trial (544 days) triggers the inquiry here. Barker v. Wingo, supra. It establishes a prima facie case of denial of a speedy trial. State ex rel. Sanford v. Dist. Ct., supra. If this prima facie case remains unrebutted, the issue is settled. In this case, the state’s rebuttal must be weighed and considered in the light of the four factor test of Barker.
The first factor to be considered is the length of the delay. In this case the state concedes that the time lapse is sufficient to trigger an inquiry into the other three elements of the balancing test. We agree. We note that speed alone is not the determining factor. Rather it is the manner in which the state has pursued the prosecution in the light of the totality of the circumstances in the case. The United States Supreme Court has placed this consideration in perspective in the following passage from United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed. 2d 627, 630:
“However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that ‘The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circum *86 stances. It secures rights to a defendant. It does not preclude the rights of public justice.’ * * * ‘Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances * * *. The delay must not be purposeful or oppressive,’ * * * ‘[T]he essential ingredient is orderly expedition and not mere speed.’ ”
In our view the state has pursued the prosecution with reasonable diligence. There is little “dead time” in which nothing was done which distinguishes this case from Steward, Sanford and Keller. Although defendants argue the state could have proceeded more expeditiously had it chosen to charge the defendants with a single crime or no more than the 6 charges they eventually ended up with in the amended Information, this is largely speculative and unconvincing in light of the 25 motions filed by defendants attacking the amended Information and the additional discovery motions, venue motion, severance motion, and motion relating to pretrial publicity. In any event, we cannot say the law of Montana is so clear that the manner of charging defendants in this case rendered the initial filing of a 19 count Information in this case unreasonable. In our view the prosecution in this case has proceeded in orderly and reasonable progression step-by-step toward trial under the criminal procedural statutes of this state.
The second factor to be weighed and considered under Barker involves the reasons for the delay. This has been partially touched upon in the preceding discussion. To be more precise, the principal delays in this case were occasioned by the time necessarily consumed in researching, briefing and arguing defendants’ 56 original motions, disqualification of judges by both the state and defendants with resulting procedural delays, requests for extensions of time by both the state and defendants, and the late filing of briefs. We do not suggest for a moment that defendants were not entitled to file their 56 motions, disqualify 2 judges, or request extensions of time. What we do say is that the resulting delays are not the responsibility of nor chargeable to the state.
*87 This brings us to one of the principal bones of contention between the state and defendants. The state contends it is not chargeable with delays inherent in the criminal justice system in the absence of fault on its part. Defendants contend that such delays are chargeable to the state because it is the state’s obligation to afford the defendants a speedy trial and the defendants have no control over the state’s criminal procedure statutes or its criminal justice system.
We reject the basic approach to this problem taken by defendants and impliedly by the district court. This approach indicates that if defendant is chargeable with a given number of days delay, the state is automatically chargeable with the remainder without regard to other considerations. Such an arbitrary and mechanical approach is unreasonable and goes far beyond the speedy trial provisions of the federal and state constitutions. It leaves society naked of the means to protect itself in the face of any protracted and spirited defense. It is directly contrary to the four factor balancing test in Barker where the conduct of both the prosecution and the defendant is weighed under the circumstances of the particular case under consideration.
We have previously held the time reasonably consumed by a defendant’s good faith motions requiring research, hearing and determination are not chargeable to defendant. State v. Keller, supra. Logic and reason compel application of the same rule to the state’s good faith efforts.
In our view the circumstances of this case indicate no intentional or deliberate delay by the state, an insignificant amount of “dead time”, no “institutional delays” in the criminal justice system beyond the statutory procedural rights of the parties, and no substantial delays for which the state is responsible or chargeable.
The third factor in the balancing process, defendants’ assertion of their right to a speedy trial, weighs most heavily against defendants under the circumstances of this case. Although failure to assert this right does not consitute a waiver of *88 the rights to a speedy trial, it is a factor to be considered in the balancing test. In Barker this consideration was expressed thusly:
“* * * The defendant’s assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.” 407 U.S. 531, 92 S. Ct. 2192-2193.
In our view the record in this case amply demonstrates that the defendants did not really want a speedy trial. They first asserted this right after protracted proceedings resulting in dismissal of 13 of the 19 counts. For 507 days after they were charged, defendants failed to even hint they desired a faster pace in the proceedings. Defendants asked for and received extensions of time. They failed to object to extensions of time granted the state. They delayed for 40 days after the closing of filings for Chief Justice of this Court before seeking Judge Hatfield’s removal because of his candidacy for a statewide elective,judicial office.
 At the time defendants filed their motions for dismissal for lack of a speedy trial, they had not pursued any pretrial discovery and were in no sense ready for trial. Six days after filing their motions for dismissal for lack of a speedy trial, defendants filed, among other things, three pretrial discovery motions and a motion to change the place of trial. Fifteen days after filing their motion for dismissal for lack of a speedy trial, defendant Gloria Eusek Carden sought severance of her trial from that of her husband and codefendant. Under these circumstances defendants’ claim of deprivation of a speedy trial loses its vitality. United States v. Churchill, 1 Cir., 483 F.2d 268; United States v. Dornau, D.C., 356 F.Supp. 1091. The further circumstance that defendants waited until the eve of trial to file their motions illustrates the transparent nature of their claim that they were deprived of their constitutional right to a speedy trial. United *89 States v. Churchill, supra; United States v. Fasanaro, 2 Cir., 471 F.2d 717; United States v. Jones, 154 U.S.App.D.C. 211, 475 F.2d 322; United States v. Toy, 157 U.S.App.D.C. 152, 482 F.2d 741; Day v. State, 61 Wis.2d 236, 212 N.W.2d 489; United States v. Saglimbene, 2 Cir., 471 F.2d 16.
The state requests us to review our prior holding in Steward and Sanford on the third factor in the Barker balancing process. The state reads these cases as holding that the filing of a motion to dismiss for lack of a speedy trial by defendant at his arraignment is a sufficient assertion of the right. Steward, unlike this case, involved essentially “dead time” between the filing of charges and arraignment and motion on the eve of trial so to speak; Sanford involved the failure of three different judges to set defendant’s motion for hearing over an eight month period despite his repeated requests. Although isolated statements in the opinions may support the state’s view of what this Court held, these statements must be read and interpreted in the context of the facts of the case in which they were made. As the United States Supreme Court recently stated:
“While it is possible to excise various portions of the plurality opinion to support the result reached below, divorcing the language from the facts of the case serves only to distort its holdings.” Illinois v. Somerville, 410 U.S. 458, 469, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425, 434.
We view this as particularly true in speedy trial cases where each case must be considered on an ad hoc basis under its particular facts in applying the balancing test of Barker. We intended no elimination of the third factor in the Barker balancing test, but simply held that under the facts and circumstances of those particular cases, defendants had properly asserted their right.
The final factor in the balancing process involves the question of whether defendants were prejudiced by the delay. We need not belabor this point. Both presumptive and actual prejudice are present to some degree in this case.
*90 Barker describes the approach to this factor in this manner:
“* * * Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (Ti) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.” 407 U.S. 532, 92 S.Ct. 2193.
Here there is nothing in the record to suggest that the defense has been impaired by the delay. There are no lost or missing witnesses. There is no showing of loss of memory.
There has been no pretrial incarceration, oppressive or otherwise.
There has been substantial anxiety and concern on the part of defendants. This has manifested itself physically, mentally and emotionally. It is perhaps more severe in this case than in the usual case. But this is an unusual case. We do not see how this anxiety and concern can be eliminated or minimized as far as these defendants are concerned until this entire workmen’s compensation investigation and prosecution is completely finished.
In summary then, the circumstances of this particular case involve substantial delay resulting primarily from the exercise of statutory procedural rights inherent in Montana’s criminal justice system for which neither the state nor the defendants are chargeable; that defendants’ assertion of lack of a speedy trial has been belated and transparent, indicating that defendants did not really want a speedy trial and were not yet ready for trial when they filed their motion; and that prejudice has re- *91 suited to defendants from the delay in the form of anxiety and concern. On the balance, we hold defendants have not been denied a speedy trial in the constitutional sense.
The order and judgment of dismissal is reversed. The case is remanded to the district court for trial.
MR. JUSTICE SHEA and JAMES M. SALANSKY, District Judge, sitting for Mr. Justice Harrison, concur.