No. 14901

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

FRANK ARTHUR SHURTLIFF,

Defendant and Appellant.

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellant:

Jardine and McCarthy, Whitehall, Montana
John Jardine argued, Whitehall, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mike McGrath argued, Assistant Attorney General,
Helena, Montana
Pat Flaherty, County Attorney, Boulder, Montana

Submitted: February 19, 1980

Decided: APR 1  1980

Filed: APR 1 0 1980

_Thomas J. Kearney_
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendant, Frank A. Shurtliff, appeals a Jefferson County District Court conviction for deliberate homicide, robbery, and theft. The issues in this appeal are whether defendant was denied a speedy trial and whether the State's case was sufficiently corroborated. We affirm.

On February 22, 1978, the State filed an information against the defendant charging him with deliberate homicide, robbery, and theft. The defendant's trial was set for June 5, 1978, but by subsequent order of the court the date was vacated and twice reset. On January 17, 1979, the court set the trial date for March 5, 1979. Five days later the State filed an amended information which charged the defendant with deliberate homicide, aggravated kidnapping, robbery, and theft. Trial was held on March 5, 1979, and the jury returned a guilty verdict to the charges of deliberate homicide, robbery, and felony theft. On April 6, 1979, the court filed its judgment and order sentencing the defendant to concurrent terms of 75 years for deliberate homicide, 25 years for robbery, and 10 years for felony theft. The defendant filed a motion for a new trial or other relief, all of which was denied. Defendant appeals from the underlying convictions and from the trial court's denial of his motion for a new trial.

The scene for these crimes started in Butte at 2:00 a.m. as the bars closed. The defendant and Yvonne Johnson met with the victim, Douglas Barber, outside the Keyboard Club. The victim suggested that they continue their partying and they then drove in the victim's automobile to a nearby house where they partied for about an hour. While at the house, defendant and witness Johnson discussed taking the victim's money. After leaving the house, the three people drove around town for a short time before departing for Elk Park.

-2-

On the way to Elk Park, the defendant and Johnson revealed to Barber that they planned to take his car and money, and leave him to die in the cold. Barber became very frightened and begged the defendant not to let him die. He attempted to jump from the car, but the defendant grabbed him and prevented him from escaping. Then Barber began to cry and continued crying almost all the way to Elk Park.

The defendant, who was driving Barber's car at the time, left the interstate and drove to a farm in the lowlands of Elk Park. He stopped the car. Barber handed his wallet to the defendant and stated, "Take my car and my money. This is all I got, but don't let me die." The defendant took Barber's wallet and told him to remove his clothes. The deceased refused, and the defendant and Johnson removed the deceased's coat and one boot. A struggle occurred in which the Barber was beaten across the face. Barber escaped from the car but his glasses, coat and one boot remained inside. Barber, who was nearly sightless without his glasses, ran blindly across a snow-covered field. The defendant started the car and turned it around, and Johnson assumed the driver's position and drove away from Elk Park. Barber's body was recovered in Elk Park a little more than one week later. He had frozen to death.

The defendant was arrested in Butte, and placed in jail on February 16, 1978. On February 22, 1978, the State filed an information which was subsequently amended to charge the defendant with deliberate homicide, aggravated kidnapping, robbery, and felony theft. Trial commenced on March 5, 1979. The State's case rested entirely on the testimony of Yvonne Johnson. The defendant presented no witness in his own defense. The jury found him guilty of the crimes of deliberate homicide, robbery, and felony theft.

Defendant contends first that he was denied his right to a speedy trial. Second, he contends that the State did not adequately corroborate the testimony of his accomplice, Yvonne Johnson. In this respect, defendant further argues that Yvonne Johnson's testimony, because it is accomplice testimony, cannot be used to establish either the corpus delecti of the crimes or his intent to commit the crime. His last assignment of error is a vague contention that the court erred in instructing the jury.

A speedy trial question must, of course, be resolved by balancing the length of the delay, the reason for the delay, the defendant's assertion of his rights, and the degree of prejudice to the defendant. See State v. Puzio (1979), ____ Mont. ____, 595 P.2d 1163, 36 St.Rep. 1004. Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The defendant was incarcerated on February 16, 1978, but he was not brought to trial for over a year. This interim is clearly long enough to require the State to explain the reason for the delay and to show the absence of prejudice to the defendant. See Puzio, supra. The defendant made a timely assertion of his right to a speedy trial by filing motions to dismiss on December 5, 1978, and on the opening day of trial. Thus, our analysis focuses on the reason for the delay and the degree of prejudice suffered by the defendant.

The defendant's trial occurred 382 days after his arrest on February 16, 1978. The trial was initially set for June 5, 1978, but this date was vacated when the defendant moved for a continuance in order to interview new witnesses. The State sent a letter to the defendant asking him whether July 10, 1978 was a suitable date for trial. However, this date became impracticable when the defendant filed a motion

-4-

for substitution of the trial judge. On June 21, 1978, the court held the hearing on defendant's motion. However, at approximately the same time defendant's first court-appointed counsel resigned and another court-appointed counsel was assigned to the case. The trial court reset the trial date for September 20, 1978, which was apparently an attempt to give new defense counsel time to prepare for trial.

A further delay resulted when defendant's counsel was substituted a second time. Defendant's second counsel ran for and was elected county attorney. In January 1979, John Jardine and Jack McCarthy were appointed counsel. At a hearing on January 10, 1979, the State informed the court that it was ready to go to trial and asked the court to set a firm date. Trial was reset for March 5, 1979, the date on which trial actually commenced.

We do not believe the delays caused by defendant's substitution of counsel should be attributed to the State. There is no mechanical test for determining whether the State or the defendant should be charged with any given pretrial delay. State v. Carden (1977), ___ Mont. ___, 566 P.2d 780, 785. The delays here appear to be the result of personal actions taken on the part of defense counsel rather than result of the justice system's failure to provide the defendant with effective counsel. Under these circumstances, the delay should not be weighed against the State.

A major delay chargeable to the State occurred when Yvonne Johnson, the State's most important witness, left the United States in November 1978. On November 17, 1978, the State moved for a continuance and the court reset the trial date from November 29, 1978 to January 15, 1979. Johnson's disappearance, however, was not a result of the State's lack of diligence, and the length of the delay was insignificant

-5-

in light of two delays resulting from substitution of defense counsel.

The defendant argues that the State's filing of an amended information on January 22, 1979 indicates that the State was not ready to proceed to trial before March 5, 1979. The State amended the information to comply with a decision we had later handed down. This argument clearly lacks merit. The State in a letter directed to the defendant on June 13, 1978 stated that it desired trial to be set on July 10, 1978. On January 10, 1979, after the defendant had acquired his third set of counsel, the State asked the court to set a firm date for trial. The record does not suggest that the prosecution took any action to stall for more time. On the contrary, the bulk of the pretrial delays were taken to accomodate the defense in its trial preparation.

The last factor relating to the right to a speedy trial is the degree of prejudice suffered by the defendant. The degree of prejudice is determined by considering the oppressiveness of the pretrial incarceration, the anxiety and concern of the defendant and the impairment of the defense. See State v. Carden, supra.

We do not find prejudice here. Although the defendant was incarcerated for approximately eleven months, the defendant's activity pretrial indicates that the long pretrial period was actually to his benefit. In addition to allowing each set of defense counsel additional time to prepare for trial, defendant used the period to obtain a continuance to interview new witnesses, to present arguments at a hearing to substitute the trial judge and to obtain a psychiatric examination to support his insanity defense. The record indicates that the defendant was actively preparing his defense throughout the entire pretrial period.

-6-

The defendant contends that his defense was weakened by his inability to take the deposition of Yvonne Johnson prior to trial. Yvonne Johnson left the country in November 1978 and her whereabouts were unknown until December 1978. Defendant's argument carries little weight because there is no showing that in the months prior to Ms. Johnson's disappearance or in the months following her return that the defendant was prevented from deposing Johnson. Statements made to the police by Ms. Johnson were included in the State's affidavit for leave to file an information on February 22, 1978, and on October 20, 1978, the defendant filed a notice of intent to depose Ms. Johnson. Thus, it is clear that from the very beginning of the proceedings against him, the State had put defendant on notice that Johnson could be a witness. Nothing in the record suggests that the defendant was unable to depose Johnson prior to her disappearance from this country.

The defendant presented no witnesses in his defense and provided this Court with no facts suggesting that his defense was weakened as a result of the delay. Defendant was not denied a speedy trial.

The defendant next contends that the State's evidence corroborating that of his accomplice, Yvonne Johnson, is insufficient as a matter of law. There can be no question that defendant could not have been convicted without Johnson's testimony; but this fact does not establish that the corroborating proof was insufficient.

Section 46-16-213, MCA, which governs the admissibility of accomplice testimony provides:

> "A conviction cannot be had on the testimony
> of one responsible or legally accountable for
> the same offense, as defined in 45-2-301, unless
> the testimony is corroborated by other evidence
> which in itself and without the aid of the

-7-

testimony of the one responsible or legally account-
able for the same offense tends to connect the
defendant with the commission of the offense.  The
corroboration is not sufficient if it merely shows
the commission of the offense or the circumstances
thereof."

The State is not required to corroborate every fact

to which the accomplice testifies.  It is sufficient if the

corroborating evidence tends to connect the defendant with

the commission of the crime.  State v. Coleman (1978), ____

Mont. ___, 579 P.2d 732, 748.  However, independent evidence

must show more than the mere opportunity to commit the crime.

If the corroborating facts and circumstances are as con-

sistent with innocence as guilt, the corroborating testimony

must be set aside.  State v. Jones (1933), 95 Mont. 317, 26

P.2d 341.  In the present case the following corroborating

evidence was introduced.

Lucille Hunt, an intimate friend of the victim, testified

that she last saw him on the night of January 3, and identified

exhibit 4 as a picture of Barber's coat, and exhibits 2A and

2B as pictures of the victim's blue Pontiac automobile.

Tommy Strictland, the owner of the Keyboard Club in

Butte, testified that he saw the victim and the defendant

with a girl outside of his club at approximately 2:30 a.m.

on the morning of January 4.  The victim's body was found

at Elk Park, a community located between Butte and Boulder.

The defendant was seen with a girl in Dot's Spot Cafe in

Boulder at 6:00 a.m., January 4.  A Boulder paperboy testified

that on the morning of January 4, the driver of a car resembling

Barber's vehicle asked him for directions to a motel.  He

identified Ms. Johnson as the woman in the car.

Later that morning, the defendant drove a car into

the O-Z Motel parking lot, and received a room from the clerk,

Donna Axt.  On the motel's register card, the defendant gave

-8-

a fictitious name and did not fill in the blanks on the card concerning the make and license number of his car. At Mrs. Axt's request, the defendant informed her that he was driving a Pontiac, but he refused to give the license number on his car. The defendant parked his car in back of the motel where it was not visible from the highway. Mrs. Axt stated that the coat defendant was wearing when he came into the motel was very similar to Barber's coat, but she could not identify it with certainty.

On the night of January 4, the defendant was arrested in Boulder for disorderly conduct. He gave a false name to the arresting officer. A missing persons report was filed on January 7 or 8, and the deceased's frozen body was found on January 11. When he was arrested in Butte, defendant was found hiding under a bed. The jury was not required to view this as the conduct of an innocent man.

The physical evidence connects the defendant with the victim, with the victim's vehicle, and with the victim's coat. This, together with defendant's behavior at the O-Z Motel and at the time of his arrest, is sufficient corroborating evidence.

The defendant next contends that accomplice testimony cannot be used to prove either the corpus delecti of a crime or to prove criminal intent. To adopt this view would of necessity require us to rule that accomplice testimony can be used only as supporting or cumulative evidence. Defendant cites no authority, nor has this view been followed in any jurisdiction to which we have been referred. See State v. Gambrell (C.A. 1977), 116 Ariz. 188, 586 P.2d 1086; Fortune v. State (Okla. Criminal, 1976), 549 P.2d 380; People v. McLaughlin (1957), 156 Cal.App.2d 291, 319 P.2d 365. Our own rules regarding corroboration are inconsistent with the

defendant's argument. Corroborating testimony need not be sufficient to establish guilt or even a prima facie case. State v. Cobb (1926), 76 Mont. 89, 92, 245 P. 265. Section 46-16-213, MCA, supra, does not expressly limit the use of corroborating testimony to that argued for by the defendant, and we decline to so construe the statute.

The defendant has presented numerous arguments concerning the trial court's instructions. He asserts that the court's instruction on the felony murder rule was erroneous because one sentence in the instruction used the word "crime" rather than felony. However, this statement of the law did not prejudice the defendant because other portions of the same instruction referred to actions in furtherance of a "felony" and each of the crimes which the defendant allegedly committed were felonies.

The defendant contends that two instructions place undue emphasis on the terms "aiding and abetting" and presupposes that there is corroboration of the accomplice's testimony. No undue emphasis is contained in these instructions and another instruction properly instructed on corroboration.

This instruction states that "the corroboration of an accomplice need not be sufficient to justify a conviction and it need not be sufficient to connect the defendant with the commission of the crime. If [sic] is sufficient if it tends to do so."

The defendant argues that the phrase "beyond a reasonable doubt" should be added to the end of the last sentence quoted above. However, this would be an incorrect statement of the law. Corroborative testimony is sufficient if it "tends to connect the defendant with the commission of the offense." Section 46-16-213, MCA. The defendant's argument is without merit. Furthermore, the jury was given a proper reasonable

-10-

doubt instruction.

The defendant's objection to instructing the jury on the question of defendant's flight is baseless. He contends there was no evidence of flight, but Donna Axt's testimony concerning the defendant's use of a fictitious name, and his covert behavior concerning his car presented the jury with evidence suggesting flight. And the accomplice's testimony, furthermore, contains a detailed explanation of the defendant's flight from the scene of the crime.

Judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-