No. 13073

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

STATE OF MONTANA,

                Plaintiff and Respondent,

    -vs-

ROBERT A. KELLER,

                Defendant and Appellant.

Appeal from: District Court of the Third Judicial District,
           Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

    For Appellant:

        Graybill, Ostrem, Warner & Crotty, Great Falls,
         Montana
        Gregory Warner argued, Great Falls, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
         Montana
        Lon J. Maxwell, Assistant Attorney General, argued,
         Helena, Montana
        James Masar, Coumty Attorney, Deer Lodge, Montana
        Daniels and Mizner, Deer Lodge, Montana
        Ted L. Mizner appeared, Deer Lodge, Montana

Submitted: May 25, 1976

Decided: AUG 2 0 1976

Filed: AUG 2 0 1976

*Thomas J. Kearney*
                          Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction of mitigated deliberate homicide in the strangulation death of his wife following trial by jury in the district court for Powell County.

On March 16, 1974, the nude body of the deceased, Gloria Keller, was found between Avon and Elliston in Powell County, Montana, hidden in an old rusted car body. Dr. John Pfaff, a forensic pathologist, concluded death was by strangulation by her brassiere found wrapped around her neck.

Defendant Robert Keller and Gloria Keller resided in/re- an apparent common law lationship as husband and wife since 1964, together with their five children, the two eldest by previous marriage of Gloria Keller.

Briefly stated, the State's case was that Gloria had disappeared the evening of February 3, 1974, after leaving the family home in East Helena with Robert in the family pickup truck; that the pickup was at the home the next day; that a stub from a parking ticket involving the truck, issued some months earlier, was found near the scene of the crime; that the de- composition of the body was such that it possibly could have lain at the scene of the crime since February 4, 1974; that Robert's later actions were consistent with knowledge that Gloria would not return; and that samples of hair and candy taken from de- ceased's sweater found with the body matched samples of hair and candy taken from the family pickup truck and samples of defendant's hair. The State also introduced evidence of prior marital disputes.

The transcript of testimony by Gary Keller, the couple's nine year old son, given at the preliminary hearing on May 10, 1974, was read at the trial to the effect that the family had

chicken for dinner February 3, before his mother's disappearance. The autopsy of deceased showed she had eaten chicken less than two hours before death. This testimony was given by a nine year old child recalling what he had eaten for dinner more than three months previously. Gary did not appear at the trial, and testimony showed he was in Wyoming.

Defendant presented a defense of alibi but was unable to present the testimony of two/witnesses he attempted to subpoena to corroborate his testimony as to his whereabouts for the hours of 7:00 to 10:00 p.m. February 3, 1974. Robert testified that Gloria drove them into Helena in the pickup and let him out to go into a bar to buy cigarettes; and that when he got out and walked to the bar, she drove off and did not return. Robert testified that he then walked home to East Helena and that when he got there, about 10:00 p.m., the truck was there with the keys in it but Gloria was gone.

Todd Keller, eleven years old, the eldest child, testified that his mother had returned, picked up some clothes, and left again. He also testified that he had helped fix Hamburger Helper for the family dinner that evening, February 3. Robert testified he saw Gloria three days later riding in a car with another man on the viaduct between Helena and East Helena but was unable to follow the car because of the median divider. Gloria had left the family unannounced on numerous other occasions for periods of a week to a month or more without leaving word of her whereabouts. During those periods Robert took care of the five children as he did on this occasion until his arrest.

Defendant seeks reversal on the following grounds:

(1) That the delay of 326 days between arrest and trial denied defendant his right to a speedy trial,

(2) The prosecution's nondisclosure of evidence contrary to the court's order to produce;

(3) Evidence illegally seized from the family pickup truck should have been excluded;

- 3 -

(4) That it was reversible error to admit evidence of a previous incident involving defendant and a gun;

(5) Improper conduct of the jury foreman; and

(6) Insufficiency of evidence to support the conviction.

The first issue on appeal is whether a delay of 326 days, or nearly eleven months from defendant's arrest until trial, deprived defendant of his right to a speedy trial. We hold it did under the circumstances here.

The right to a speedy trial is mandated by the Sixth Amendment to the Constitution of the United States and Article II, Section 24 of the 1972 Montana Constitution, which states:

"In all criminal prosecutions the accused shall have the right to * * * a speedy public trial * * *."

In applying this guarantee to the particular facts of each case, this Court has adopted the balancing test that the United States Supreme Court described in Barker v. Wingo, 407 U.S. 514, 33 L Ed 2d 101, 92 S.Ct. 2182 (1972). See State v. Steward, ____Mont.____, 543 P.2d 178, 181, 32 St.Rep. 1185 (1975); and State ex rel. Sanford v. District Court, decided July 8, 1976, ____Mont.____, ____P.2d____, 33 St.Rep. 644. The four factors to be considered are: (1) Length of delay, (2) reason for delay, (3) defendant's assertion of the right, and (4) prejudice to the defendant.

Directing our attention first to the length of the delay we note that Robert Keller was arrested March 21, 1974, and trial began February 10, 1975, nearly 11 months later. This delay was presumptively prejudicial, and triggered the balancing of factors. See Steward where 12 months between arrest and arraignment was held to be presumptively prejudicial; State ex rel. Sanford where 10 months between arraignment and trial was held to be presumptively prejudicial delay; and Fitzpatrick v. Crist, 165 Mont. 382, 388, 528 P.2d 1322 (1974), where 7 months was

held " * * * long enough to shift to the state the burden of explaining the reason for the delay and showing absence of prejudice * * *."

One of the major purposes of the constitutional provision is to guard against delay, both to protect the defendant's rights and to further the State's interests in criminal prosecutions. As was said in Barker at page 110:

> "The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to nego-tiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. * * * Moreover, the longer an accused is free awaiting trial, the more tempt-ing becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.
>
> " * * * Finally, lengthy pretrial detention is costly. * * * In addition, society loses wages which might have been earned, and it must often support families of incarcerated breadwinners." (Emphasis supplied.)

In his concurring opinion in Barker, at page 121 Justice White emphasizes one of the major purposes in protect-ing the accused. Wholly aside from possible prejudice to a de-fense on the merits, the accused will be subject to substantial restrictions on his liberty pending trial, either in jail or while free on bond, "' * * * that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' U.S. v. Marion, 404 U.S. 307, 320 (1971)."

In summary, criminal charges should not be brought until

there is sufficient evidence to believe a crime has been committed by the person charged and until the prosecution is prepared to proceed within a reasonable time.

Delay also hampers the liberty of possible witnesses and impairs their memory, thus impairing both the prosecution and the defense in their quest of the truth.

We recognize that delay may be used as a defense tactic. Where the record strongly indicates that the defendant did not want a speedy trial, we would be reluctant to rule that he has been denied this constitutional right. See Barker at page 120. Such is not the case here.

In considering the reason for the delay in this case, we observe that the preliminary hearing was not held until seven weeks after arrest. The State contends this time was necessary for defendant to obtain counsel. However, it appears defendant was able to obtain counsel within 16 days after his arrest, and no valid excuse for the remaining five week delay is shown.

The preliminary hearing was held May 10. The order of the justice court binding defendant over to district court is dated August 15, fourteen weeks later. The justice court delayed its decision after the preliminary hearing until it could receive laboratory reports. Neither the results of the tests nor the items tested were properly admitted in evidence. Also see section 95-902, R.C.M. 1947 and section 95-1202, R.C.M. 1947, which declare the justice of the peace shall hold a preliminary examination within a reasonable time and shall hear the evidence without unnecessary delay.

In any event, the laboratory results were dated May 16, 1974, from the State Criminal Investigation Laboratory in Missoula, and June 25, 1974, from the Criminal Detection Laboratory Center for the Oregon State Department of State Police. Yet the order

binding defendant over to district court was not signed until August 15, 1974.

The justice court docket, on the contrary, indicates that defendant was bound over to district court and the papers given to the county attorney on July 5, 1974. If this be the case, the Information filed on August 29 was filed more than 30 days after the defendant was held to answer, in direct violation of section 95-1302, R.C.M. 1947.

The State has shown no valid justification for the more than five months delay between arrest, March 21, and filing of charges in district court on August 29, 1974.

The State offers as further excuse a crowded court docket and the unavailability of a court reporter. This is not a valid excuse because the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. See State v. Steward, ___Mont.___, 543 P.2d 178, 181, 32 St.Rep. 1185; Strunk v. United States, 412 U.S. 434, 436, 37 L Ed 2d 56, 60, 93 S.Ct. 2260 (1973); Barker v. Wingo, supra, Dickey v. Florida, 398 U.S. 30, 37, 26 L Ed 2d 26, 90 S.Ct. 1564 (1970).

The State also suggests that delay was caused by defendant's motions requiring research, hearing and determination. It cannot be seriously contended that defendant has filed any motions for the purpose of delay. Defendant filed motions for dismissal, production of evidence, and suppression of evidence on the day charges were filed in district court, a motion for rehearing on October 23, and pretrial motions after the trial date had been set. It does not appear to us that the time reasonably taken up by defendant's good faith motions excuse the delay in this case. Furthermore, the State's actions in withholding notice of witnesses, withholding evidence, and otherwise delaying proceedings were the fountainhead of defendant's motions.

- 7 -

Defendant has asserted the right to speedy trial on at least four occasions by an appropriate motion to dismiss beginning May 29, 1974, and continuing through trial.

Finally, prejudice to the defendant has resulted from the delay in this case.

This Court has followed Barker in identifying three factors to be considered with respect to prejudice to the defendant:

> " * * * (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. * * * "

Barker at 118, Steward at 183, State ex rel. Sanford at 647. The united States Supreme Court went on to say in Barker at 118:

> " * * * Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."

With respect to the three specific prejudicial factors:

(1) Robert Keller was held in jail for forty days after arrest. When he was released on bond, he was required to remain on his brother's ranch near Cutbank, Montana.

(2) For five months Robert did not know if he would be required to defend himself on the charges in district court. He stated that during the time before trial he had to send his children out of Montana to live with other relatives because of talk going around.

(3) Actual prejudice to his defense on the merits resulted from the delay. Two witnesses that could possibly have verified defendant's alibi could not be found to be served with subpoenas and had apparently moved out of the state. Determination of the factual issue of what the family had for dinner February 3, 1974, and how long the victim had been dead could only become more difficult with the passage of time. Also, the

- 8 -

court had reserved determination of the issues of legality of searches until testimony could be introduced at the trial. Inquiry into the legality of the searches and into what was seized was hampered by the faulty memories of the officers involved.

In summary, after considering all the circumstances and the factors set forth in Barker, we hold that there has been an excessive delay; that the State has not made a showing of justification for such delay; that defendant has consistently asserted his right to a speedy trial, and that some prejudice has resulted by reason of the delay.

It could be argued from the record before us that the real reason for the delay was a lack of evidence on the part of the prosecution. If this be so it provides a particularly compelling reason for dismissal. To approve of delay where there is an appearance that it is due to lack of sufficient evidence in the hands of the State would be to condone unwarranted and unjust plea bargaining leverage for the State. By delaying the proceedings, the State can pressure the defendant into a plea in order to rid himself of the onus of the pending charge and to return as soon as possible to a normal way of living. This relieves the State of its obligation to develop its case to the point where it can be proved beyond a reasonable doubt.

Unjustified delay can be a frightful weapon for the State and a disarming weapon for the defendant. The proper administration of justice requires the withdrawing of this weapon from the hands of both.

Two other wide-spread concerns with undue delay should be noted. Delayed criminal justice proceedings are undermining public confidence in the system itself. Justice delayed may not only be justice denied but justice brought seriously under question.

The backbone of law enforcement and the justice system is public support. The courts must not permit the erosion of that support by permitting unnecessary delay between charge and conviction or release.

The other concern is that delay may seriously erode the deterrent effect of the criminal law. It is forcefully argued by experts in the field of corrections that the promise of sure and speedy justice may be at least as effective as long, costly sentences in discouraging criminal activity. If this be so, and at least to some degree it seems unarguable, then celerity in criminal proceedings becomes not only an instrument of justice but a valuable tool for corrections.

These reasons for limiting the time for criminal proceedings have been recognized for many years elsewhere and have been acted upon in the federal justice system and in many states.

In 1968 the American Bar Association House of Delegates approved and set certain standards for speedy trial after lengthy research by the association's project on standards for criminal justice. Standard 2.1, as adopted, provides:

> "A defendant's right to speedy trial should be expressed by rule or statute in terms of days or months running from a specified event. Certain periods of necessary delay should be excluded in computing the time for trial, and these should be specifically identified by rule or statute insofar as is practicable." (ABA compilation, Pg. 276, (1974))

In 1967 The President's Commission on Law Enforcement and Administration of Justice recommended a normal period of four months for the processing of felony prosecutions (The Challenge of Crime in a Free Society, pg. 155).

In 1973 The National Advisory Commission in Criminal Justice Standards and Goals set a sterner standard:

> "The period from arrest to the beginning of trial of a felony prosecution generally should not be longer than 60 days." (Standard 4.1, Courts)

The federal "Speedy Trial Act of 1974" (P.L. 93-619, 93rd Congress, S. 754, Jan. 3, 1975) commands the federal courts to commence trial within 60 days from arraignment on information or indictment (18 USC 3161(c)). Periods of delay are permitted under specified circumstances (18 USC 3161(h)). The sanction is dismissal (18 USC 3162(a)(1)).

In those states which have adopted specific limitations by rule or statute, the time range varies on felony prosecutions from 75 days to six months (see "Commentary" on Standard 4.1, Courts, NAC, supra.).

After more than a year of research and consideration, the Courts Task Force of The Montana Study on Criminal Justice Standards and Goals concluded this year in its Standard 4.1:

> "If the defendant pleads not guilty he shall be tried as soon as possible after such plea. The trial date shall be set, by the judge, within 60 days of the plea unless good cause is shown by the prosecution or the defendant why he should not be brought to trial within that period. * * *"

The group, consisting of a diverse selection of leading members of the bench and bar, law enforcement agencies and corrections personnel, also concluded that legislation was not necessary for implementation. They noted:

> " * * * Trial judges may establish these guidelines for their courts, or The Montana Supreme Court, acting under their supervisory authority, may establish such requirements. The latter would be most preferable, affecting all of the state courts uniformly and simultaneously." (Implementation, Std. 4.1, supra)

This Standard, together with its implementation suggestion, has been adopted by The Montana Justice Project Council.

Having determined that defendant has been denied his right to a speedy trial, the next question is whether dismissal of the charges is the proper remedy.

The Supreme Court of the United States addressed this question in Strunk v. United States, 412 U.S. 434, 439, 37 L Ed 2d

- 11 -

56,/93 S.Ct. 2260.  In <u>Strunk</u> the district court upheld defendant's objection to denial of speedy trial.  As a remedy it deducted the amount of delay from the length of his sentence.  The Supreme Court held that denial of speedy trial mandated dismissal in these words:

> " * * * By definition, such denial is unlike some of the other guarantees of the Sixth Amendment.  For example, failure to afford a public trial, an impartial jury, notice of charges, or compulsory service can ordinarily be cured by providing those guaranteed rights in a new trial.  The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving--uncertainties that a prompt trial removes.  (Citing cases.) * * *
>
> " * * *
>
> " * * * It is true that Barker described dismissal of an indictment for denial of a speedy trial as an 'unsatisfactorily severe remedy'.  Indeed, in practice, 'it means that a defendant who may be guilty of a serious crime will go free, without having been tried.'  407 U.S., at 522, 33 L Ed 2d 101.  But such severe remedies are not unique in the application of constitutional standards.  <u>In light of the policies which underlie the right to a speedy trial, dismissal must remain</u>, as Barker noted, '<u>the only possible remedy.</u>'" (Emphasis supplied.)  Strunk v. U.S. at Page 61.

This remedy conforms with that recommended by the American Bar Association in its Speedy Trial Standard 4.1 and with the federal statute (18 USC 3162).

There are additional independent grounds that require reversal in this case.  Defendant objected to the State withholding evidence in violation of a court order to produce evidence, to the introduction of illegally seized evidence, and to the admission of prejudicial evidence concerning a previous incident involving a gun.  Each of these three contentions is independent grounds for reversal.

In the first instance, the district court granted defendant's

- 12 -

motion to produce evidence of any admissions or statements by the defendant, a list of all possible prosecution witnesses, all evidence intended for introduction by the prosecution, and the results of all tests whether favorable or not. The prosecution failed to provide this information.

The prosecution did not reveal the results of the laboratory tests until shortly before trial. Notice that the two expert witnesses who conducted these tests would testify, was not given until the day of trial as to one, and four days before trial as to the other, even though these results were in the hands of the prosecution months before the motion to produce was granted.

Notice of the witnesses who would present a major portion of the prosecution case was not given in some cases until the day of trial and in other cases until a few days before trial.

It appears that the sheriff was in possession of numerous articles taken in searches, but unknown until after trial when evidence was ordered to be returned. It appears that he did not make a proper return on the search warrant and that he did not make an inventory of articles taken on the search warrant or consent searches or otherwise. The only inventory filed was filed after trial.

The defense questioned the sheriff at the preliminary hearing and deposed him 10 days before trial in efforts to learn of any statements by defendant or other evidence in the hands of the State. Yet a tape recording of defendant was first revealed at the trial in testimony by the sheriff in rebuttal to defendant's testimony. The sheriff made the recording two days after arrest while defendant was in custody without aid of counsel.

The fact that a witness would be presented to testify to a prior threat by defendant was not revealed prior to trial.

Defendant's efforts to discover and examine possible evidence before trial and to determine the legality of their taking were completely frustrated. The actions of the prosecution in withholding evidence and notice of witnesses were contrary to the court's order to produce and contrary to the intent and purpose of Title 95, Chapter 18, Production and Suppression of Evidence, Montana Code of Criminal Procedure.

Additionally, the sheriff confiscated defendant's truck the day after arrest and transported it from East Helena to Deer Lodge without defendant's knowledge. He attempted to remove the taint of illegality by a consent form signed by defendant four days later that does not purport to be retroactive. Defendant's signature was obtained after search of the truck while defendant was held in jail in the absence of counsel. Material obtained from this truck was the subject of the laboratory tests and was introduced in evidence over defendant's objection. This material was illegally obtained, and its admission in evidence and the expert testimony and laboratory tests concerning it was prejudicial error.

Finally, the prosecution introduced testimony describing defendant's arrest some weeks prior to the alleged homicide when he attempted to confront his wife. At that time defendant was arrested on an assault complaint made by her two months prior to the incident in question. The arresting officer discovered defendant was carrying a concealed pistol and charged him with that offense. There is not sufficient similarity between that incident involving the concealed gun and the charges of death by strangulation in this case. State v. Jensen, 153 Mont. 233, 455 P.2d 631, and cases cited there. Such evidence of other wrongful acts tends to excite prejudice and mislead the jury from the real point in issue. State v. Merritt, 138 Mont. 546, 549, 357 P.2d 683 and

authorities cited there.  Also, " * * * the defendant is entitled to be informed of the crime charged so as to prepare his defense and proof of other crimes subjects him to surprise and defense of multiple collateral or unrelated issues." Jensen at page 238.  Its admission was prejudicial error.

In view of our ruling on the first four grounds of appeal, it becomes unnecessary to consider the final two specifications of error.

For the foregoing reasons, the judgment of conviction is reversed and the Information ordered dismissed with prejudice.

_____
                                   Justice

We concur:

_____
Justice

_____
Hon. Gordon Bennett sitting for
Mr. Chief Justice James T. Harrison

Mr. Justice John Conway Harrison concurring and dissenting:

I concur in the reversal of the conviction on the grounds stated by the majority as to issues two, three and four, but I must state my dissent as to issue one, that of speedy trial, and not returning the case to the district court for retrial.

Without in any way denigrating the conclusions reached by the majority, I am of the opinion, particularly in view of the fact we have recently completely reviewed and adopted a New Criminal Code covering both the substantive procedural law and have also adopted a new Constitution, that we should leave to the legislature the adoption of standards for what constitutes a "speedy trial". What this Court has done recently in trying to follow the dictates of the United States Supreme Court's opinion in Barker v. Wingo in our opinions in State v. Stewart and State ex rel. Sanford v. District Court may well be establishing by judicial dictate a standard not acceptable to our lawmakers.

I do not read into the Barker decision that which is here found by the majority. Even though the United States Supreme Court in its effort to say what constituted a "speedy trial" by setting up certain criteria to judge a claim of denial, it is of import to note that the decision does not establish definite time limits for determining when the right has been denied. All the Court did was to draw a constitutional blue print to assist us in establishing the limits. They left to us to decide, on a case by case basis, the cases that we must judge using as a balancing test "in which the conduct of both the prosecution and the defendant are weighed."

Justice Powell, writing for a unanimous court in Barker, found that there were three ways in which the right of speedy trial differs inherently from other constitutional rights that protect an accused. First, the right involves considerable

- 16 -

societal interests apart from those of the accused and the general concern for a fair system of criminal justice. Second, the right to a speedy trial differs significantly from other constitutional rights of an accused in that its denial is not always detrimental to the accused. Third, the right to a speedy trial is more indefinite than other procedural rights.

As noted previously Barker does not provide much guidance for lower courts in determining whether a speedy trial was denied an accused. The opinion fails to establish guidelines or procedures to implement the right to a speedy trial. Rather, the court adopted an ad hoc balancing test as being constitutionally appropriate for a right that is necessarily relative. In so doing it rejected two inflexible approaches; one, the establishment of a specific time limit; second, the "demand-waiver" rule.

The court in Barker, in adopting the ad hoc balancing test directs a court faced with the speedy trial issue in the problem of weighing the following factors: (1) Length of delay; (2) reason for delay; (3) defendant's assertions of his rights; and (4) prejudice to the defendant. In so doing they set the stage for the development of procedural and substantive standards by either the courts or the legislature. This being a substantive matter it should be considered by the legislature.

In New Jersey the court has adopted a rule that would alleviate the difficulty this Court finds itself in in considering what amounts to a speedy trial. New Jersey Rule 3.25.2 established that after six months following accusation, a court of its own motion or that of the defendant may set the case for trial on a certain day. If the case is not tried on that day, the court may dismiss the charge and the dismissal operates as an acquittal. Should the legislature fail to consider this problem at its next session I would favor adopting a rule, similar to that of New

Jersey, under our rule making power, but I would first let them consider the problem.

I would reverse the conviction and send it back for a new trial.

_____
Justice

Mr. Justice Wesley Castles dissenting:

I dissent. Although I certainly agree with the majority statements concerning delay in justice as being a detriment to public support for the justice system, I think those statements are misapplied here. The majority attributes the entire 11 months between arrest and trial as delay brought on by the state. Surely this is not correct. The preliminary hearing time was at defendant's request and possibly to his advantage. Crowded court calendars are a fact, and the defendant's use of pretrial motions are legitimate but are not chargeable against the state. I fear that this Court's opinion will result in continuous jury terms being required throughout Montana for the benefit of the accused without regard to costs to the taxpayers or whether any prejudice to a fair trial results. My own experience indicates that delay is to the defendant's advantage rather than prejudice. The old defense play of letting the grass grow green over the grave of the victim will now be enhanced by this decision. I concur in Justice John Conway Harrison's dissent on issue No. 1.

I would affirm the judgment, but since the majority opinion reverses and dismisses on the issue of speedy trial, the gratuitous observations thereafter on the other issues are dicta only, and I shall not elaborate on my reasoning.

_Wesley Castles_
Justice