STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* BRIAN
TIEDEMANN, DEFENDANT AND RESPONDENT.

No. 14083.
Submitted on Briefs May 9, 1978.
Decided Sept. 18, 1978.
584 P.2d 1284.

396

Denzil R. Young, Jr., County Atty., Baker, Mike Greely, Atty. Gen., Helena, for plaintiff and appellant.

Gene Huntley, Baker, for defendant and respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

Defendant Brian Tiedemann was charged with three offenses — aggravated assault, felony criminal mischief, and driving while intoxicated — following a high-speed chase on April 11, 1976, which resulted in the destruction of two police cars stationed as a roadblock and of the car driven by Tiedemann. On August 24, 1977, 500 days after defendant was first taken into custody, the District Court, Fallon County, dismissed the charges for failure to diligently prosecute. The State appeals under section 95-2403, R.C.M. 1947.

This appeal was classified as Class No. 2 under the Internal Operating Rules of this Court, and as such has been decided on the briefs submitted without oral argument.

The District Court, in making its ruling of dismissal, urged the county attorney to appeal to this Court "in order that guidelines could be handed down based upon this case for the edification of all trial courts in Montana, all prosecutors and all defense attorneys on the speedy trial question".

Before proceeding to a consideration of the speedy trial issue, however, we are forced to clarify a question of the record we will consider on appeal. Defendant-respondent has raised several challenges to the accuracy of the Justice Court record for the first time on this appeal by way of affidavits from defendant, defendant's mother, the county attorney, the justice of the peace, and defendant's counsel. These are not proper materials to be brought before this Court.

"Appeals can only be taken on the record made, not on the record which should have been made." *State v. Totterdell* (1959), 135 Mont. 56, 61, 336 P.2d 696, 699. Review is limited to the existing record which cannot be supplemented or supplanted by affidavits filed for the first time on appeal. *State v. Thomson* (1976), 169 Mont. 158, 166, 545 P.2d 1070, 1074; *State v. Lane* (1973), 161 Mont. 369, 374-75, 506 P.2d 446, 449. The time for defendant to have lodged his objections to the record being made was before this appeal was taken. Rule 46, M.R.Civ.P. The affidavits have not been considered.

The right to a speedy trial is guaranteed by both the United States and Montana Constitutions. U.S.Const., Amend. VI; 1972 Mont.Const., art. II, § 24. The right to a speedy trial is fundamental, *Klopfer v. North Carolina* (1967), 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 8, and the federal standard, as a minimum, is imposed by the due process clause of the Fourteenth Amendment on the states. See *Dickey v. Florida* (1970), 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26; *Smith v. Hooey* (1969), 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607.

■ The touchstone in any analysis of the speedy trial issue is *Barker v. Wingo* (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116-17, in which the Supreme Court set out a four factor balancing approach with the conduct of both prosecution and defense being weighed. The four factors to be considered are:

(1) Length of delay;

(2) Reason for the delay;

(3) Defendant's assertion of the right; and,

(4) Prejudice to the defendant.

The Court emphasized the necessity of balancing the factors:

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

This Court has adopted and applied the four factor balancing test of *Barker* in a series of decisions dating back to 1973. See *State v. Collins* (1978), 178 Mont. 36, 582 P.2d 1179; *State v. Cassidy* (1978), 176 Mont. 385, 578 P.2d 735, 737; *State ex rel. Briceno v. District Court* (1977), 173 Mont. 516, 568 P.2d 162, 164; *State v. Keller* (1976), 170 Mont. 372, 377, 553 P.2d 1013, 1016; *State ex rel. Sanford v. District Court* (1976), 170 Mont. 196, 199, 551 P.2d 1005, 1007; *State v. Steward* (1975), 168 Mont. 385, 389, 543 P.2d 178, 181; *Fitzpatrick v. Crist* (1974), 165 Mont. 382, 388, 528 P.2d 1322, 1325; *State v. Sanders* (1973), 163 Mont. 209, 213, 516 P.2d 372, 375. We reaffirm our support of this test as the correct and most complete standard available to judge speedy trial questions.

*Length of delay.* Length of delay has been referred to as the trigger setting off the speedy trial issue inquiry:

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial,

there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

Accord, *Keller*, 170 Mont. at 377, 553 P.2d at 1017; *Steward*, 168 Mont. at 389, 543 P.2d at 181.

◼ In the instant case, the State concedes that the time lapse is sufficient to trigger an inquiry into the other three factors of the balancing test. We agree. The delay in the present case (500 days — 16½ months — from date of arrest to date of dismissal) is longer than the delays found sufficient to warrant dismissal in *Fitzpatrick* (seven months), *Cassidy* (eight months), *Sanford* (ten months), *Briceno* (ten and one-half months), and *Keller* (eleven months).

◼ The length of delay thus shifts the burden to the State of explaining the reason for the delay and showing absence of prejudice to defendant. *Cassidy*, 578 P.2d at 738; *Sanford*, 170 Mont. at 200; 551 P.2d at 1007; *Fitzpatrick*, 165 Mont. at 388, 528 P.2d at 1326.

*Reason for the delay.* It is on this factor that the views of the State and those of defendant most sharply conflict. Successful resolution of this conflict will, to a large extent, resolve the speedy trial issue in this case.

The successful motion to dismiss filed by defendant was entitled "Motion to Dismiss for *Failure to Diligently Prosecute*". (Emphasis added.) It is this euphemism for violation of the right to speedy trial that, in our view, describes what has happened in this case. From the beginning, we find the record replete with instances of prosecutorial delays, duplications, errors, and missed deadlines, which individually may account for only a few weeks or a month but in their sum stretch out to nearly a year and a half for the prosecution of an alleged offense that should have been disposed of in a much shorter time. See *Keller*, 170 Mont. at 383, 553 P.2d at 1020; Courts Task Force of the Montana Study on Criminal Justice

Standards and Goals, Standard 4.1 (1976) ("The trial date shall be set, by the judge, within 60 days of the plea . . .").

■ We begin our analysis of this factor with the general rule: "A defendant has no duty to bring himself to trial; the State has that duty . . ." *Barker*, 407 U.S. at 527, 92 S.Ct. at 2190, 33 L.Ed.2d at 115. The Montana legislature, in enacting the Code of Criminal Procedure, has defined what satisfies that duty by establishing time limits within which certain prosecutorial steps must be taken, absent good reason for failure by the State or waiver by the defendant. It is against these statutory time limits that we measure the diligence of the prosecution of defendant. *Keller*, 170 Mont. at 379, 553 P.2d at 1017-18.

■ Defendant was first taken into custody on April 11, 1976. This arrest began the ticking of the speedy trial clock. *Dillingham v. United States* (1975), 423 U.S. 64, 65, 96 S.Ct. 303, 304, 46 L.Ed.2d 205, 207. It was not until April 29, however, that he was brought before a justice of the peace for his initial appearance. Section 95-901, R.C.M.1947, requires any person making an arrest to take the arrested person before the appropriate judge for an initial appearance "without unnecessary delay".

We are unable to discover from the record a reason for this delay of 18 days which on its face appears unnecessary. *Cf. State v. Johnston* (1962), 140 Mont. 111, 113, 367 P.2d 891, 892 (21 days detention). We recognize that as a result of the automobile accident in which defendant was involved, he suffered some injuries, especially to his face, which required treatment in a hospital until, at the latest, April 18. Aside from this possible reason for delay, *In re Walker* (1974), 10 Cal.3d 764, 778, 112 Cal.Rptr. 177, 186, 518 P.2d 1129, 1138, we discern from the testimony at the preliminary hearing that defendant was not immobilized or otherwise rendered unable to come to court during the 11 days between his release from the hospital and his initial appearance. While this delay in initial appearance may not, of itself, violate constitutional principles (a question we do not reach here), it does indicate the pace at which the prosecution proceeded and did contribute to the overall denial of speedy trial.

■ 401

At the initial hearing on April 29, defendant requested and was granted a preliminary examination which was scheduled for May 5. The Justice Court docket entry relating to this incident reads:

"[B]ecause of inability to obtain a Court Reporter preliminary hearing was postponed, and upon request of defendant to enable him to return to the North Slope of Alaska and the defendant's agreement to waive the possible time defect in the State's proceeding by reason of the delay in the preliminary hearing in order to allow the defendant to return to work, the preliminary hearing was vacated from time to time until October 12, 1976 . . .''

This entry obviously has something for everybody. The State points to the fact that defendant requested the hearing be scheduled so that he could return to work in Alaska. Defendant on the other hand claims it was the failure of the State to obtain a court reporter that caused the postponement of the hearing. In *Barker*, the Supreme Court discussed administrative delays:

"A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

Accord, *Steward*, 168 Mont. at 390, 543 P.2d at 181.

The State contends, nevertheless, that as a result of "the defendant's agreement to waive the possible time defect", defendant is chargeable with the entire five-month delay between the originally scheduled preliminary hearing date and the actual date.

■ We disagree for two reasons. First, there is no written waiver of speedy trial signed by defendant or his counsel. We find it impossible to determine from the limited docket entry the scope of defendant's agreement to waive—whether it was only until a court reporter could be obtained or until defendant's periodic return from Alaska or whether it was broad enough to cover the five-month delay. We will not lightly infer a waiver of a fundamental

right for this length of time on such a spotty record. *Barker*, 407 U.S. at 525-26, 92 S.Ct. at 2189-90, 33 L.Ed.2d at 114; *Steward*, 168 Mont. at 392, 543 P.2d at 182; *Fitzpatrick*, 165 Mont. at 386, 528 P.2d at 1324-25.

Second, the unrefuted affidavit of defendant's counsel filed along with his motion to dismiss for lack of speedy trial states that defendant returned from Alaska to Baker every four weeks for a two-week vacation during which time he was available for the preliminary hearing. Furthermore, the preliminary examination, when it was finally held, was scheduled at a time when defendant was not available and without reference to his convenience. This contradicts the State's contention that this delay was for defendant's · benefit.

Sections 95-902 and 95-1202, R.C.M. 1947, require that a preliminary hearing be held "within a reasonable time" and the evidence heard "without unnecessary delay". The State has failed to carry the burden placed on it by virtue of the five-month delay to show that the delay was necessary. Additionally, after a five month period, ostensibly at the request of defendant, during which the · State should have been finalizing its case, what happens on October 12, the day of the preliminary examination? We quote from the same docket entry as above:

". . . the preliminary hearing was continued until the chemical report of the contents of the defendant's blood for blood alcohol content was received. Thereafter on October 29, 1976, or thereabouts, the defense counsel and the County Attorney reappeared before this Court, the chemical examination report was offered in evidence and received without objection."

No explanation is given for this additional two-and-one-half-week delay requested by the State to prepare its case. No reason is given why a routine blood analysis took nearly six months to be performed. This virtually inexcusable delay is of greater constitutional significance than the prior five-month delay, especially in view of the prior delay. It is strongly indicative of lack of prosecutorial diligence and violates the tenet of *Keller*, 170 Mont. at 378, 553 P.2d at 1017:

"In summary, criminal charges should not be brought until there is sufficient evidence to believe a crime has been committed by the person charged and until the prosecution is prepared to proceed within a reasonable time."

As a result of the October 29 hearing, defendant was bound over to the District Court to answer the charges filed by the State. Forty-eight days later the State filed an information charging defendant with the three counts of aggravated assault, criminal mischief, and driving while intoxicated. Again, we refer to the legislative standards of what constitutes reasonable diligence, in this case section 95-1302, R.C.M.1947:

"After the defendant has been examined and held to answer . . . the county attorney must file, within thirty (30) days, in the proper district court an information charging the defendant with the offense for which he is held to answer, or any other offense disclosed by the evidence. If the county attorney fails to file the information within the time specified he may be found guilty of contempt, and may be prosecuted for neglect of duty."

There is nothing in the record to justify 18 days' delay beyond the statutory limit for filing the information. *Keller*, 170 Mont. at 379, 553 P.2d at 1018. Although defendant's failure to object to this irregularity before entering his plea waived the statutory remedies, *State v. Chevigny* (1913), 48 Mont. 382, 384, 138 P. 257, 257, we must nevertheless view the failure to timely file as a contributory factor toward the denial of a speedy trial.

On March 15, 1977, following a motion to dismiss, defendant was arraigned. During the arraignment proceeding, it became apparent that Count II of the information was insufficient for failure to state the statute under which the offense was charged as required by section 95-1503(c)(2), R.C.M.1947. The court, over defendant's objection, allowed the county attorney to amend the information orally to include a reference to section 94-6-102, R.C.M.1947, the criminal mischief statute. Following the arraignment, a tentative trial date of late April was agreed upon. The State relies on this discussion of the trial date to show the good faith nature of the delays

heretofore discussed, specifically the following statement by the district judge:

"THE COURT: Now, we have set or continued this arraignment for your convenience. It was the feeling of this court that because of your employment in Alaska it would be unfair to you to just set an arraignment date down and make you come down here to attend it, add additional expense and also it might interfere with your work, but pending the court's ruling the matter will be set for trial and I was wondering if you have any specified time that would fit in with your schedule when you could be tried?

It is obvious the District Court's reference was only to the scheduling of the arraignment and the trial and not at all to any of the delays connected with the initial hearing, preliminary examination, filing of the information, or of those delays yet to be discussed. Therefore, it cannot be used to justify those other delays.

On April 6, the District Court dismissed defendant's motions to dismiss for misjoinder and to sever for trial the felony and misdemeanor charges. At the same time, the court, apparently forgetting that it had already granted a motion to amend Count II to allege the statute violated, dismissed Count II for failure to "state the statute the accused is accused of violating."

The State did not react to this mistake for 69 days, until June 13, before filing a motion to amend the information. The tentative trial date of late April had come and gone. No reason is offered by the State for this two-month delay.

The motion to amend cited the wrong statute so that at the hearing on July 19 (rescheduled from July 7 for no apparent reason), the motion was denied. All that was accomplished between March 15 and July 19 was the dismissal of a charge against defendant and the wasting of four months of the speedy trial clock. None of these four months is chargeable to defendant.

Trial was again set following a second arraignment for August 29, which would have been 505 days after defendant was first taken into custody and four months after the first scheduled trial date. On August 18 defendant moved to dismiss for failure to dili-

gently prosecute and filed a supporting affidavit. This motion was heard and granted on August 24, 1977, exactly 500 days after defendant was first taken into custody.

■ Without allocating to each side the number of days' delay caused by it, we hold the vast majority of the delays were caused by and attributable to the State. This holding is made despite defendant's waiver of the time defects in the preliminary hearing proceedings. Even attributing to defendant the 160-day delay between the first scheduled date and the actual date of the preliminary hearing, the State failed to diligently prosecute this case by failing to bring it to trial before another 316 days had passed. The types of institutional delays we have enumerated, where the State consistently ignores or misses statutory procedural time limits, simply cannot be overlooked, absent counterbalancing factors.

*Defendant's assertion of the right.* There are only two instances in the record where the matter of speedy trial came up during the proceedings: (1) When the defendant agreed "to waive the possible time defect in the preliminary hearing delay", and (2) when defendant filed his motion to dismiss for failure to diligently prosecute 11 days before the scheduled trial date.

We have already discussed the import of the waiver in our view. First, we are not clear and will not infer from the record available that defendant's waiver was broad enough to cover the five-month delay in these proceedings.

Second, the most defendant's waiver could encompass even under the State's argument is the 160-day delay between the original and actual date of the preliminary hearing. Even conceding this delay chargeable to defendant, the State failed in its duty to bring this case to trial speedily. Defendant's waiver, together with a vague record, is of less importance to our holding under these facts.

■ As to the timing of defendant's motion to dismiss for lack of speedy trial, we hold this was a sufficient and proper assertion of the right to a speedy trial under the rule announced in *Steward*, 168 Mont. at 390-91, 543 P.2d at 182, and affirmed in *Cassidy*, 578 P.2d at 739:

"The general rule remains that an accused must take some affirmative action to obtain a trial to be entitled to a discharge for delay. 22A C.J.S. Criminal Law § 469, p. 37. In *United States v. Research Foundation*, D.C., 155 F.Supp. 650, 654, the court said:

" '. . . The burden is on the defendant to assert his constitutional right by some affirmative act in court, such as, objecting to adjournments of the trial, demanding a trial, or making an appropriate motion.'

"The 'appropriate motion' is a motion to dismiss for denial of a speedy trial. *The proper time to assert the right to a speedy trial is prior to the actual commencement of the trial, usually at the time the trial date is set, or the time the case is called to trial.*" (Emphasis added.)

*Prejudice to the defendant.* The final factor to be considered in the balancing process is the question of whether defendant was prejudiced by the delay. This prejudice is further defined in *Barker:*

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

Defendant apparently spent no time in jail, and the interest in avoiding oppressive pretrial incarceration is not present.

There has been no trial, and, except for the preliminary hearing five months after the fact, no witness testimony to indicate a loss of memory regarding past events. But, as we said in *Steward*, 168 Mont. at 393-94, 543 P.2d at 183:

"It is difficult to determine whether defendant would be prejudiced due to impairment of his defense as there has been no trial or witness testimony which might indicate a loss of memory regarding events of the distant past. The prosecution might also have its case impaired due to the loss of memory of its witnesses, but the greater danger of prejudice exists for an innocent defendant who

might, through lapse of time, be unable to accurately recall events on a certain day when there was no remarkable or memorable occurrences to etch the memory of the day in his mind."

 Although the facts of this case indicate that defendant was involved in a spectacular automobile crash which might serve "to etch the memory of the day in his mind", we nevertheless feel the excessive delay between the date of the occurrence and the time of trial could only cause more and more of the surrounding circumstances leading up to and following the accident to become more and more vague in the minds of both prosecution and defense witnesses. Therefore, we are reluctant to hold as a matter of law that no prejudice of this kind would result to defendant if this case were to be tried.

Finally, the record is scant as to the existence of anxiety and concern caused defendant. Several of the elements of this prejudice, identified by the United States Supreme Court as curtailment of speech, association and participation in unpopular causes, *Klopfer v. North Carolina* (1966), 386 U.S. 213, 222, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 7, disruption of employment and draining of financial resources, *United States v. Marion* (1971), 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478, appear to be totally lacking.

Nevertheless, other identifiable elements of this type of prejudice, such as subjection to public hostility and creation of anxiety in family and friends, are undoubtedly present. Given the nature of the charges, public and private feelings against defendant would be expected, *Steward*, 168 Mont. at 393, 543 P.2d at 183, and resultant anxiety and concern on the part of defendant can be presumed. *Cassidy*, 578 P.2d at 740.

 We re-emphasize that we are engaged in a delicate balancing process. In *Moore v. Arizona* (1973), 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183, 185, the Supreme Court stated: *"Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." While the presence or absence of prejudice should be weighed in the balancing, the lack or specu-

lative or general nature of it will not, in and of itself, result in a denial of a motion to dismiss for lack of speedy trial, if the other factors so strongly indicate, as they do here, that the motion is warranted.

On balance, it appears to us there has been an excessive delay in bringing this case to trial; the State has failed to explain satisfactorily the reasons for the delay; the defendant properly and timely asserted his right to a speedy trial; and, some prejudice has resulted to defendant by reason of the delay.

This Court, as well as many other courts, has often stated that society at large, as well as the individual defendant, has a stake in the speedy disposition of criminal matters. E.g., *Barker*, 407 U.S. at 519-21, 92 S.Ct. at 2186-87, 33 L.Ed.2d at 110-11. In view of the result in this case, the comments of now Chief Justice Haswell in *Keller* bear repeating:

". . . Delayed criminal justice proceedings are undermining public confidence in the system itself. Justice delayed may not only be justice denied but justice brought seriously under question. The backbone of law enforcement and the justice system is public support. The courts must not permit the erosion of that support by permitting unnecessary delay between charge and conviction or release." 170 Mont. at 382, 553 P.2d at 1019.

In this case, the citizens of Fallon County had a dramatic high-speed chase through their county ending with the destruction of two police cars and the car driven by defendant. As a result of the District Court decision which we affirm today, they are seeing the person charged with that destruction walking away free — without a trial even being held. See *Strunk v. United States* (1973), 412 U.S. 434, 439, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56, 61. The destructive impact on the confidence of those citizens in our criminal justice system must be nearly as great figuratively as the destructive impact of defendant's car on the two police cars.

While we will not tolerate undue delay in the prosecution of an individual defendant, neither will society long tolerate dismissal of criminal charges for lack of speedy trial. Prosecutors and courts

must work to avoid the kind of result we reach today.

The judgment of the District Court dismissing the charges for lack of a speedy trial is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES SHEA, HARRISON and SHEEHY concur.