No. 14628

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

GREGORY PUZIO and CELESTE ALLEN,

Defendants and Respondents.

_____

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Mike McCarter, Assistant Attorney General, argued,
Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Jock West argued, Deputy County Attorney, Billings,
Montana

For Respondents:

Moses, Tolliver and Wright, Billings, Montana
Ralph S. Wright argued, Billings, Montana
John L. Adams argued, Billings, Montana

_____

Submitted: May 1, 1979

Decided: **MAY** 3 0 1979

Filed: **MAY** 3 0 1979

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendants were arrested on November 28, 1977, and subsequently charged with the crime of criminal possession with intent to sell dangerous drugs. Trial was set by the District Court for October 10, 1978, some ten and one-half months, or 317 days, after arrest. On September 26, 1978, defendant Puzio moved to dismiss the matter for lack of a speedy trial. The District Court granted the motion. The State appeals under section 95-2403, R.C.M. 1947, now section 46-20-103 MCA.

Before considering the speedy trial issue, however, we must clarify a question of the record we will consider. Both parties in their briefs make statements of fact concerning the parole revocation of defendant Puzio which are not supported in the record. The parties on appeal are bound by the record and may not add additional facts in their briefs or by appendices thereto. Thrift v. Thrift (1918), 54 Mont. 463, 171 P. 272; Farmers State Bank of Conrad v. Iverson (1973), 162 Mont. 130, 509 P.2d 839. The statements of fact not contained in the record concerning the parole revocation of defendant Puzio have not been considered.

In State v. Tiedemann (1978), ____ Mont. _____, 584 P.2d 1284, 1287, 35 St.Rep. 1705, 1706-07, this Court discussed the right to a speedy trial:

> "The right to a speedy trial is guaranteed by both the United States and Montana Constitutions. U.S. Const., Amend. VI; 1972 Mont. Const., art. II, §24. The right to a speedy trial is fundamental, Klopfer v. North Carolina (1967), 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 8, and the federal standard, as a minimum, is imposed by the due process clause of the Fourteenth Amendment on the states. See Dickey v.

-2-

Florida (1970), 398 U.S. 30, 90 S.Ct. 1564, 26
L.Ed.2d 26; Smith v. Hooey (1969), 393 U.S. 374,
89 S.Ct. 575, 21 L.Ed.2d 607.

"The touchstone in any analysis of the speedy
trial issue is Barker v. Wingo (1972), 407 U.S.
514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101,
116-17, in which the Supreme Court set out a
four factor balancing approach with the conduct
of both prosecution and defense being weighed.
The four factors to be considered are:

"(1) Length of delay;

"(2) Reason for the delay;

"(3) Defendant's assertion of the right; and,

"(4) Prejudice to the defendant.

"The Court emphasized the necessity of balanc-
ing the factors:

"'We regard none of the four factors identified
above as either a necessary or sufficient con-
dition to the finding of a deprivation of the
right of speedy trial. Rather, they are related
factors and must be considered together with
such other circumstances as may be relevant. In
sum, these factors have no talismanic qualities;
courts must still engage in a difficult and sen-
sitive balancing process.' 407 U.S. at 533, 92
S.Ct. at 2193, 33 L.Ed.2d at 118.

"This Court has adopted and applied the four fac-
tor balancing test of Barker in a series of de-
cisions dating back to 1973. See State v. Collins
(1978), ___ Mont. ___, 582 P.2d 1179, 35 St.Rep.
993; State v. Cassidy (1978), ___ Mont. ___,
578 P.2d 735, 737, 35 St.Rep. 612; State ex rel.
Briceno v. District Court (1977), ___ Mont. ___,
568 P.2d 162, 164, 34 St.Rep. 927; State v. Keller
(1976), 170 Mont. 372, 377, 553 P.2d 1013, 1016;
State ex rel. Sanford v. District Court (1976),
170 Mont. 196, 199, 551 P.2d 1005, 1007; State
v. Steward (1975), 168 Mont. 385, 389, 543 P.2d
178, 181; Fitzpatrick v. Crist (1974), 165 Mont.
382, 388, 528 P.2d 1322, 1325; State v. Sanders
(1973), 163 Mont. 209, 213, 516 P.2d 372, 375.
We reaffirm our support of this test as the cor-
rect and most complete standard available to
judge speedy trial questions."

The Court in Tiedemann then went on to discuss the

first factor, length of delay:

"Length of delay. Length of delay has been re-
ferred to as the trigger setting off the speedy
trial issue inquiry:

"'The length of the delay is to some extent a trig-
gering mechanism. Until there is some delay which
is presumptively prejudicial, there is no neces-
sity for inquiry into the other factors that go
into the balance. Nevertheless, because of the
imprecision of the right to speedy trial, the
length of delay that will provoke such an inquiry
is necessarily dependent upon the peculiar circum-
stances of the case.' Barker, 407 U.S. at 530-31,
92 S.Ct. at 2192, 33 L.Ed.2d at 117.

"Accord, Keller, 170 Mont. at 377, 553 P.2d at
1017; Steward, 168 Mont. at 389, 543 P.2d at
181." 584 P.2d at 1287-88, 35 St.Rep. at 1707.

In the instant case, the time lapse is sufficient to

trigger an inquiry into the other three factors of the

balancing test. The delay (317 days, ten and one-half

months, from date of arrest to date set for trial) is longer

than or comparable to the delays found sufficient to warrant

dismissal in Fitzpatrick (seven months), Cassidy (eight

months), Sanford (ten months), Briceno (ten and one-half

months), and Keller (eleven months). "The length of delay

thus shifts the burden to the State of explaining the reason

for the delay and showing absence of prejudice to defen-

dant." Tiedemann, 584 P.2d at 1288. See also Cassidy, 578

P.2d at 738; Sanford, 170 Mont. at 200, 551 P.2d at 1007;

and Fitzpatrick, 165 Mont. at 388, 528 P.2d at 1326.

Reason for the delay. The parties agree that neither

defendants nor the county attorney's office was the cause of

any great delay in this case. They contend that the main

reason for the delay was crowded court dockets and inade-

quate calendaring procedures. We agree.

Judge Sande had jurisdiction of the case at two dif-

ferent times as did Judge Luedke. Both Judge Wilson and

Judge Martin assumed jurisdiction once. The main cause of

the delay was that the case simply sat from the time Judge

Wilson assumed jurisdiction in April 1978 until he excused

-4-

himself August 9, 1978. On August 16, 1978, Judge Sande again assumed jurisdiction and was again substituted by defendant Puzio. Judge Luedke again assumed jurisdiction, and the matter was eventually set for trial on October 10, 1978.

The State argues it prosecuted the case with reasonable diligence and should not be responsible for crowded court dockets and the method of scheduling trials. We do not agree. The court in Cassidy flatly held that this position of the State is without merit. 578 P.2d at 738. The situation here is very similar to that found in Briceno in that the matter simply sat on the calendar from April 1978 until it was eventually set for trial in October 1978.

In United States v. Jones (D.C. Cir. 1975), 524 F.2d 834, 849, the Court stated:

> ". . . The Supreme Court has held that delays due to the operation of the system also must be placed at the Government's door, stating in Barker v. Wingo:
>
> "'A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process . . . [T]he rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial.'"

We find that delays inherent in the system are not chargeable to defendants but rather to the State. The type of institutional delays we have herein enumerated, where a case is allowed to merely sit awaiting trial, cannot be overlooked, absent counterbalancing factors.

Defendants' assertion of rights. We find that defendants asserted their rights properly under the guidelines set forth by this Court in State v. Steward (1975), 168 Mont. 385, 543 P.2d 178.

The following statement by this Court in <u>Cassidy</u> is

dispositive on this factor:

"3. <u>Defendant's Assertion of the Right.</u>

"The State argues, in this regard, that defendant
has failed to expedite the proceedings in this
case through any active pleadings before the Dis-
trict Court, such as by requesting an earlier
trial date. In addition, it is maintained that
defendant's motion to dismiss for denial of a
speedy trial was untimely, and should have been
made at some point between entry of plea and the
setting of the trial date. The State does not
specifically contend, however, that defendant in
some manner waived his right to assert a denial
of a speedy trial.

"It is, of course, the general rule under the
present state of the law that '. . . an accused
must take some affirmative action to obtain a
trial to be entitled to a discharge for delay.'
State v. Steward, 168 Mont. 390, 543 P.2d 182.
Such burden is satisfied, however, by the mak-
ing of an appropriate motion, discussed by this
Court in <u>Steward</u> as follows:

"'The "appropriate motion" is a motion to dismiss
for denial of a speedy trial. The proper time
to assert the right to a speedy trial is prior
to the actual commencement of the trial, usually
at the time the trial date is set, or the time
the case is called to trial . . .' 168 Mont.
390-91, 543 P.2d 182.

"Defendant's assertion of the right in this case
was in all respects proper under the standard
outlined in <u>Steward</u>, having been made between
the time the matter was set for trial and the
trial date itself." 578 P.2d at 739.

<u>Prejudice to defendants</u>. The final factor to be con-

sidered in the balancing process is the question of whether

defendants were prejudiced by the delay. This prejudice is

further defined in <u>Barker</u>:

"Prejudice, of course, should be assessed in
light of the interests of defendants which the
speedy trial right was designed to protect.
This Court has identified three such interests:
(i) to prevent oppressive pretrial incarcera-
tion; (ii) to minimize anxiety and concern of
the accused; and (iii) to limit the possibility
that the defense will be impaired." 407 U.S.
at 532, 92 S.Ct. at 2193, 33 L Ed 2d at 118.

-6-

With regard to oppressive pretrial incarceration, defendant Puzio has been incarcerated since the day of his arrest. Defendant Allen was not incarcerated prior to trial. Puzio was detained in the Yellowstone County jail away from his family and friends during the entire Christmas and New Year's holidays. Then he was given a parole revocation and was removed from the county jail to the state prison. He was then returned to Yellowstone County by the sheriff for each of his court appearances and returned to the prison.

The second item to be considered is the anxiety and concern of the accused. Here, the delay of 317 days, along with Puzio's removal from Billings across the state to Deer Lodge, and the inability to communicate by telephone were reasons for Puzio to have a great deal of concern about the progress in his case, and a great deal of concern about the preparation of his defense.

The last consideration under prejudice to the defendants is the possibility that the defense will be impaired. Barker states that this concern is the most serious because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. The court in Barker commented on the possibility of witnesses dying, witnesses unable to recall accurately events of the distant past, and loss of memory.

These items are always a problem because the record does not always reflect what has been forgotten. In this particular case, Puzio has been incarcerated in the state prison, a great distance from his defense counsel and the scene of the crime. He has not been able to assist in the preparation of his defense except by letter. Further, with

regard to memory, the State is the only benefactor since its policy usually requires witnesses to type their statements and scenarios of activity which are used to refresh their recollection. However, lay witnesses called by the defendants rarely have their past recollections refreshed by statements and scenarios prepared by them at the time the events occurred, which, in this case, was November 28, 1977--two days after Thanksgiving.

We find the fact that Puzio has been incarcerated the entire time since his arrest on November 28, 1977, demonstrates affirmative prejudice against him.

We reemphasize that we are engaged in a delicate balancing process. The presence of prejudice in this case should be weighed heavily in the balancing of all factors.

On balance, we find there has been excessive delay in bringing this case to trial; the State has failed to explain satisfactorily the reasons for the delay; the defendants properly and timely asserted their right to a speedy trial; and, prejudice to defendant Puzio has resulted by reason of the delay.

We believe the comments of now Chief Justice Haswell in Keller, as set forth in Tiedemann again bear repeating:

> "This Court, as well as many other courts, has often stated that society at large, as well as the individual defendant, has a stake in the speedy disposition of criminal matters. E.g., Barker, 407 U.S. at 519-21, 92 S.Ct. at 2186-87, 33 L.Ed.2d at 110-11. In view of the result in this case, the comments of now Chief Justice Haswell in Keller bear repeating:

> "'. . .Delayed criminal justice proceedings are undermining public confidence in the system itself. Justice delayed may not only be justice denied but justice brought seriously under question. The backbone of law enforcement and the justice system is public support. The courts must not permit the erosion of that support by permitting unnecessary delay between charge and conviction or release.' . . . " Tiedemann, 584 P.2d at 1292-93.

We stated further in <u>Tiedemann</u>:

> "While we will not tolerate undue delay in the
> prosecution of an individual defendant, neither
> will society long tolerate dismissal of criminal
> charges for lack of speedy trial.  Prosecutors
> and courts must work to avoid the kind of result
> we reach today."  584 P.2d at 1293.

We recommend that the judges of the Thirteenth Judicial District of the State of Montana would do well to cooperate to the extent that the situation that occurred in this case is not repeated.

The judgment of the District Court dismissing the charges for lack of a speedy trial is affirmed.

_____
                 Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

-9-